**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **TRAXCELL TECHNOLOGIES, LLC.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 2:17-cv-00718-RWS-RSP** |
| **v.** | ) | **(CONSOLIDATED LEAD CASE)** |
| | ) | |
| **AT&T CORP. AND AT&T MOBILITY** | ) | |
| **LLC,** | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFF TRAXCELL TECHNOLOGIES, LLC'S**
**OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.   CLAIM-CONSTRUCTION LAW ........................................................................... 1

    A.   Resolving a Claim-Construction Dispute ...................................................... 1

    B.   Other Legal Principles .................................................................................. 1

II.   TERMS FOR WHICH DEFENDANTS PROPOSE A CONSTRUCTION ................. 3

    A.   FIRST COMPUTER / COMPUTER ............................................................. 3

    B.   SECOND COMPUTER  / A SECOND COMPUTER .................................... 8

    C.   A SECOND PROCESSOR ............................................................................ 9

    D.   PERFORMANCE DATA  / PERFORMANCE ISSUE / PERFORMANCE  / ...................................................................................... 11

    E.   MEANS FOR RECEIVING SAID PERFORMANCE DATA AND SUGGEST CORRECTIVE ACTIONS OBTAINED FROM A LIST OF POSSIBLE CAUSES FOR SAID RADIO TOWER BASED UPON THE PERFORMANCE DATA AND THE CORRESPONDING LOCATION ASSOCIATED WITH SAID AT LEAST ONE WIRELESS DEVICE  /

        MEANS FOR RECEIVING SAID PERFORMANCE DATA AND CORRESPONDING LOCATIONS FROM SAID RADIO TOWER AND CORRECTING RADIO FREQUENCY SIGNALS OF SAID RADIO TOWER, AND, WHEREBY SAID FIRST COMPUTER CORRECTS THE RADIO FREQUENCY SIGNALS OF THE RADIO TOWER IN ORDER TO IMPROVE COMMUNICATION WITH SAID WIRELESS DEVICES .................................................... 13

    F.   ERROR CODE ........................................................................................... 14

    G.   FAULTY ..................................................................................................... 15

    H.   STATUS REQUEST .................................................................................. 15

    I.   ACCESS FLAG and NO ACCESS FLAG ................................................... 16

    J.   PREFERENCE FLAG ................................................................................ 17

III.   TERMS DEFENDANTS ASSERT ARE INDEFINITE ........................................... 18

    A.   ROUTINELY ............................................................................................. 18

    B.   ONE OF THE RADIO-FREQUENCY TRANSCEIVERS ............................ 19

    C.   THE SECOND RADIO FREQUENCY TRANSMITTER ............................ 20

    D.   CLAIM 1 PURPORTED INDEFINITENESS:   IN ORDER TO RESTRICT PROCESSING OF RADIO FREQUENCY SIGNALS FROM AT LEAST ONE OF SAID AT LEAST TWO WIRELESS

**DEVICES. . .  IN ORDER TO IMPROVE COMMUNICATION WITH AT LEAST ONE SAID WIRELESS DEVICE**.......................................20

**E.**    **REFERENCING PERFORMANCE / REFERENCING THE PERFORMANCE DATA** ..................................................................................24

**F.**    **WHEREIN THE FIRST COMPUTER PROVIDES ACCESS TO THE INDICATION OF LOCATION TO THE SECOND COMPUTER IF THE NO ACCESS FLAG IS RESET AND DENIES ACCESS TO THE INDICATION OF LOCATION TO THE SECOND COMPUTER IF THE NO ACCESS FLAG IS SET  /**

**PROVIDING ACCESS FROM THE FIRST COMPUTER TO THE INDICATION OF LOCATION TO THE SECOND COMPUTER IF THE NO ACCESS FLAG IS RESET; AND THE FIRST COMPUTER DENYING ACCESS TO THE INDICATION OF LOCATION TO THE SECOND COMPUTER IF THE NO ACCESS FLAG IS SET** ..............25

**G.**    **'284-PATENT CLAIM 12**...................................................................26

**IV.**    **CONCLUSION** ............................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Aero Products Intern., Inc. v. Intex Recreation Corp.*, 466 F.3d 1000 (Fed. Cir. 2006) .............. 18

*Applera Corp. v. MJ Research, Inc.*, 297 F. Supp. 2d 453 (D. Conn. 2004); ............................ 3, 9

*Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296 (Fed. Cir. 2013). .................................. 1

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246 (Fed. Cir. 2011). ..................... 3

*Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2:15-cv-1047-RSP, 2016 U.S. Dist. LEXIS
    105750 (E.D. Tex. Aug. 10, 2016) ........................................................................................ 2

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008) .............................. 23

*Beachcombers Int'l, Inc. v. Wildewood Creative Products, Inc.*, 31 F .3d 1154 (Fed. Cir. 1994). 12

*Becton Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249 (Fed. Cir. 2010) .......... 12

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) .................................................... 12

*Cellular Commc'ns Equipment LLC, v. AT&T, Inc.*, No. 2:15-CV-576-RWS-RSP, 2016 U.S. Dist.
    LEXIS 174666 (E.D. Tex. Dec. 19, 2016) .................................................................... 2, 9, 10

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, No. 16 C 6097, 2017 U.S. Dist. LEXIS 53509
    (N.D. Ill. Apr. 7, 2017) ................................................................................................... 3, 9

*Collaborative Agreements, LLC v. Adobe Sys.*, No. 15-cv-03853-EMC, 2015 U.S. Dist. LEXIS
    161809 (N.D. Cal. Dec. 2, 2015) ...................................................................................... 14

*Core Wireless Licensing S.a.r.l. v. LG Elecs. Inc.*, No. 2:14-cv-0911-JRG-RSP, 2015 U.S. Dist.
    LEXIS 150041 (E.D. Tex. Nov. 5, 2015) ....................................................... 2, 9, 10, 17

*Freeny v. Murphy USA Inc.*, No. 2:13-CV-791-RSP, 2015 U.S. Dist. LEXIS 6377 (E.D. Tex. Jan.
    21, 2015) ........................................................................................................................... 1

*In re Gardner*, 480 F.2d 879 (C.C.P.A. 1973) .......................................................................... 24

*Intellectual Ventures II LLC v. BITCO General Ins. Corp.*, No. 6:15-CV-59, 2016 U.S. Dist.
    LEXIS 3299 (E.D. Tex. Jan. 11, 2016) ...................................................... 19, 21, 23

*Mallinckrodt, Inc. v. Masimo Corp.*, 254 F. Supp. 2d 1140 (C.D. Cal. 2003) .............................. 9

*Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363 (Fed. Cir. 2009) ........................... 24

*Maytag Corp. v. Electrolux Home Prods., Inc.*, 411 F. Supp. 2d 1008 (N.D. Iowa 2008) .......... 1, 9

*Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) ........................ 1

*Mobile Telecommc'n Techs., LLC v. Google Inc.*, No. 2:16-CV-2-JRG-RSP, 2016 U.S. Dist.
    LEXIS 174667 (E.D. Tex. Dec. 18, 2016) ..................................................................... 1, 9

*Mobile Telecommc'ns, LLC v. T-Mobile USA, Inc.*, 78 F. Supp. 3d 634 (E.D. Tex. 2015) ............. 1

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ........................................ 25

*Nokia Solutions & Network US LLC v. Huawei Techs. Co. Ltd.*, No. 2:16-cv-0756-JRG-RSP,
    2017 U.S. Dist. LEXIS 79837 (E.D. Tex. May 24, 2017) .............................................. 1, 9, 17

*Optis Cellular Tech., LLC v. Kyocera Corp.*, Nos. 2:16-cv-0059-JRG-RSP, 2017 U.S. Dist. LEXIS 18191 (E.D. Tex. Feb. 8, 2017) ................................................................................. 1

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565 (Fed. Cir. 1986)............ 19, 21, 23

*Papst Licensing GmbH v. Apple Inc.*, No. 6:15-cv-01095, 2017 U.S. Dist. LEXIS 32379 (E.D. Tex. Mar. 7, 2017) ....................................................................................................................... 18

*PerdiemCo, LLC v. IndusTrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 U.S. Dist. LEXIS 87927, at *64 (E.D. Tex. July 7, 2016) .................................................................... 1, 2, 8, 9, 10

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998).......................... 2

*Rhine v. Casio, Inc.*, 183 F.3d 1342 (Fed. Cir. 1999) ............................................................... 25

*Rockwell Automation, Inc. v. 3-S Smart Software Solutions, GmbH*, No. 2:15-CV-1543-JRG-RSP, 2016 U.S. Dist. LEXIS 138209 (E.D. Tex. Oct. 5, 2016) ................................................ 14

*Smartflash LLC v. Apple Inc.*, 77 F. Supp. 3d 535 (E.D. Tex. 2014) ........................................ 14

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279 (Fed. Cir. 2008) ....................... 8

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165 (Fed. Cir. 1993)................... 12

*Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*, No. 2:17-cv-00042-RWS-RSP, 2019 U.S. Dist. LEXIS 2130 (E.D. Tex. Jan. 7, 2019)  ...................................................8, 11, 14, 19, 23, 24, 26

*Traxxas, L.P. v. Hobbico, Inc.*, No. 2:16-CV-00768-JRG-RSP, 2017 U.S. Dist. LEXIS 162858, (E.D. Tex. Sept. 29, 2017)................................................................................................... 8, 9

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997) ........................................ 1

*Versata Software, Inc. v. Sun Microsystems, Inc.*, No. 2:06-cv-358, 2008 U.S. Dist. LEXIS 63645, 2008 WL 3914098 (E.D. Tex. Aug. 19, 2008) ............................................................ 14

## STATUTES

35 U.S.C. § 112 ...................................................................................................................... 18, 24

## OTHER AUTHORITIES

Dictionary.com (defining "each") *available at https://www.dictionary.com/browse/each*........... 22

## CONSTITUTIONAL PROVISIONS

Tex. Const. Art. I, § 19........................................................................................................... 25

U.S. Const. Amendments V, XIV............................................................................................. 25

# I.    CLAIM-CONSTRUCTION LAW

## A.  Resolving a Claim-Construction Dispute

The parties' claim-construction dispute will typically be reflected by the proposed

constructions. Thus, a court's rejection of a defendant's proposed construction and adoption of a

"plain and ordinary meaning" construction will typically resolve the parties' claim-construction

dispute without need for further construction of the term.[1]

## B.  Other Legal Principles

The purpose of claim construction is "'to clarify and when necessary to explain what the

patentee covered by the claims, for use in the determination of infringement.'"[2]

"'Claim construction focuses primarily on the language of the claims."[3] Per this "primacy

of the claims,"[4]  "'[T]he claim construction inquiry, [ ], begins and ends in all cases with the

---

[1] *See PerdiemCo, LLC v. IndusTrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 U.S. Dist. LEXIS 87927, at *64 (E.D. Tex. July 7, 2016) (Payne, Mag.) (stating, "The Court therefore expressly rejects Defendants' indefiniteness arguments. No further construction is necessary.  [Citations and paragraph break omitted]. Defendants have cited *Maytag Corp. v. Electrolux Home Prods., Inc.*, 411 F. Supp. 2d 1008 (N.D. Iowa 2008), as authority for the proposition that construction is required because 'asserting that [the ordinary meaning of a term] should apply, without further construction, merely begs the question of what that meaning is.'  [Citations omitted]. *Maytag* is not binding authority and, moreover, here the Court has resolved the parties dispute by rejecting Defendants' indefiniteness argument and Defendants' argument that the breadth of the 'code' terms necessarily gives rise to a lack of reasonable certainty as to claim scope. [Paragraph break omitted]. The Court accordingly hereby construes **"user identification codes"** and **"authorized user identification code"** to have their **plain meaning**. [Court's original bolding.].); *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-cv-123-JRG-RSP, 2018 U.S. Dist. LEXIS 7711, at **84, 115 (E.D. Tex. Jan. 18, 2018) (Payne, Mag.) (distinguishing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008))); *Optis Cellular Tech., LLC v. Kyocera Corp*., Nos. 2:16-cv-0059-JRG-RSP, 2017 U.S. Dist. LEXIS 18191, at **87, 88, 92 (E.D. Tex. Feb. 8, 2017) (Payne, Mag.) (distinguishing *O2 Micro*);  *Nokia Solutions & Network US LLC v. Huawei Techs. Co. Ltd.*, No. 2:16-cv-0756-JRG-RSP, 2017 U.S. Dist. LEXIS 79837, at *70 (E.D. Tex. May 24, 2017) (Payne, Mag.) (distinguishing *O2 Micro*); *Mobile Telecommc'n Techs., LLC v. Google Inc.*, No. 2:16-CV-2-JRG-RSP, 2016 U.S. Dist. LEXIS 174667, at **51, 52 (E.D. Tex. Dec. 18, 2016) (Payne, Mag.).

[2] *Mobile Telecommc'ns, LLC v. T-Mobile USA, Inc.*, 78 F. Supp. 3d 634, 656 (E.D. Tex. 2015) (Payne, Mag.) (quoting *U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997));  *Freeny v. Murphy USA Inc.*, No. 2:13-CV-791-RSP, 2015 U.S. Dist. LEXIS 6377, at *90 (E.D. Tex. Jan. 21, 2015) (Payne, Mag.) (quoting the same case).

[3] *Mobile Telecommc'ns, LLC v. T-Mobile USA, Inc.*, 78 F. Supp. 3d at 664 (quoting *Aria Diagnostics, Inc. v. Sequenom, Inc*., 726 F.3d 1296, 1300 (Fed. Cir. 2013)).

[4] *Id.*

actual words of the claim.'"[5]

In the absence of ambiguity, construing claim terms with different language than that of the claim (i.e., providing a construction other than "plain and ordinary meaning") runs the risk of "redraft[ing],"[6] "redefin[ing],"[7] or otherwise "chang[ing]"[8] a claim term's meaning. The danger of "redraft[ing]"[9] or "redefin[ing]"[10] a claim term's meaning is particularly heightened when a proposed construction uses words found nowhere in the patent specification.[11]

Unless the patent applicant clearly redefined (in the application or prosecution history) a term, an easily understandable, unambiguous term should simply be construed as "plain and ordinary meaning."[12] A proposed construction narrowing a term from its plain and ordinary meaning should be rejected if the intrinsic evidence does not require the narrowing restriction.[13]

---

[5] *Id.* (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)).

[6] *See Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2:15-cv-1047-RSP, 2016 U.S. Dist. LEXIS 105750, at **93, 173 (E.D. Tex. Aug. 10, 2016) (Payne, Mag.).

[7] *See Core Wireless Licensing S.a.r.l. v. LG Elecs. Inc.*, No. 2:14-cv-0911-JRG-RSP, 2015 U.S. Dist. LEXIS 150041, at **60, 61, 65, 66 (E.D. Tex. Nov. 5, 2015) (Payne, Mag.).

[8] *See Freeny*, 2015 U.S. Dist. LEXIS 6377, at **52, 61, 68, 90 Payne, Mag.).

[9] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **93, 173 (Payne, Mag.).

[10] *See* Core *Wireless Licensing S.a.r.l.*, 2015 U.S. Dist. LEXIS 150041, at **60, 61, 65, 66 (Payne, Mag.).

[11] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at *173 (Payne, Mag.) (stating, "'[G]rooves' does not appear in the specification. The Court is not persuaded that it should redraft the claims to replace a term that is in the specification with a term that is not in the specification, particularly when doing so would not provide any additional clarity."); *Freeny*, 2015 U.S. Dist. LEXIS 6377, at *73 (Payne, Mag.) (stating, "The specification never uses the term 'group' or 'encoded,' and the Court rejects Defendant's inclusion of these terms as not being necessary or warranted.").

[12] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **106, 108, 127 173, 174 (Payne, Mag.); *Traxxas, L.P. v. Hobbico, Inc.*, No. 2:16-CV-00768-JRG-RSP, 2017 U.S. Dist. LEXIS 162858, at *41 (E.D. Tex. Sept. 29, 2017) (Payne, Mag.).

[13] *Arthrex*, 2016 U.S. Dist. LEXIS 105750, at *127 (Payne, Mag.) (stating, "There is nothing in the claim language that *requires* [emphasis added] the width to be the largest width."); *Optis Cellular*, 2017 U.S. Dist. LEXIS 18191, at *27 (stating, "Defendants have pointed to no clear language in the intrinsic record of lexicography, disavowal, or disclaimer *mandating* [emphasis added] that 'mapping' be limited to 'placing.'"); *Mobile Telecommc'ns, LLC v. T-Mobile USA, Inc.*, 78 F. Supp. 3d at 661 (stating, " . . . Defendants have failed to identify anything in the claims or the specification that *necessarily limit* [emphasis added] s the disputed term to . . ."); *see also PerdiemCo,*, 2016 U.S. Dist. LEXIS 87927, at *90 (stating, "Plaintiff has not demonstrated that the existence of multiple 'levels' *necessarily requires* [emphasis added] a hierarchical organization."); *Cellular Commc'ns Equipment LLC v. AT&T, Inc.*, No. 2:15-CV-576-RWS-RSP, 2016 U.S. Dist. LEXIS 174666, at **62, 63 (E.D. Tex. Dec. 19, 2016) (Payne, Mag.) (stating, "[T]he specification does not *limit* [emphasis added] the claim scope to 'resource blocks' (RBs), which are only one disclosed example."); *Core Wireless Licensing S.a.r.l.*, 2015 U.S. Dist. LEXIS 150041, at *90 (Payne, Mag.) (stating, "There is no *requirement* [emphasis added] in the claim that . . .").

A defendant proposing a different construction because of purported ambiguity bears the burden of proving the ambiguity.[14]

## II. TERMS FOR WHICH DEFENDANTS PROPOSE A CONSTRUCTION

### A. FIRST COMPUTER[15] / COMPUTER[16]

| Claim Term | Traxcell's Construction | Defendants'[17] Construction |
|---|---|---|
| "first computer" / "computer" | "plain and ordinary meaning" | "first single computer" / "single computer" |

Disavowal of claim scope requires a clear intent by the patentee.[18]  A patentee's use of words will not result in estoppel unless there is a clear intent to so limit the construction.[19]  There is no disavowal of claim scope for the term "first computer" or "computer" and no requirement that "single be inserted in the construction.

In ECF 244-3, an Office Action Response dated September 28, 2012, Reed was consistent with his use of "first computer" throughout the response.  On two ocasions Reed uses the word 'single' in diffentiating that the Reed inventon does not require a computer in the

---

[14] *Optis Cellular*, 2017 U.S. Dist. LEXIS 18191, at **91, 92 (stating, "Defendants have not demonstrated any lack of clarity of the actual claim language in light of the specification.");  *Freeny*, 2015 U.S. Dist. LEXIS 6377, at **52, 60, 68, 90 (Payne, Mag.) (stating, "Absent clear evidence to the contrary, the Court is hesitant to change the plain meaning of a term.");  *see also Applera Corp. v. MJ Research, Inc.*, 297 F. Supp. 2d 453, 455, 456 (D. Conn. 2004); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, No. 16 C 6097, 2017 U.S. Dist. LEXIS 53509, at *55 (N.D. Ill. Apr. 7, 2017).

[15] This term is in claims of U.S. Patent Nos. 8,977,284 (the "'284 Patent") and 9,510,320 (the "'320 Patent"). Defendants' P.R. 4-3 Disclosure identification of terms (i.e., ECF No. 148-2) erroneously indicates the same claim terms are in the '284 Patent, the '320 Patent, and U.S. Patent No. 9,642,024 (the "'024 Patent"). ECF No. 148-2 at 1–26.

[16] This term is in claims of the '284 Patent, '320 Patent, '024 Patent, and U.S. Patent No. 9,549,388 (the "'388 patent")." Defendants' P.R. 4-3 Disclosure identification of terms (i.e., ECF No. 148-2) erroneously indicates this term is not in the '388 Patent. *See* ECF No. 148-2 at 12–14.

[17] Defendants AT&T Corp., AT&T Mobility LLC, Sprint Communications Company, LP, Sprint Corporation, Sprint Spectrum, LP, Sprint Solutions, Inc., T-Mobile USA, Inc., and Verizon Wireless Personal Communications LP.

[18] *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011).

[19] *Id.*

3

wireless device, but never provides that Reed is limiting itself to a single computer.  The first instance is in a heading:

**II.M.  Single computer needed in Reed *et al.* v. additional software needed in Andersson *et al.*** [20]

The heading itself indicates the usage is not limiting.  The word needed indicates that Reed can function on a single computer.  Further, the words "single computer needed" is compard to "additional software" required in a prior art referece, and does not state or imply:

1.  Reed's invention is a single computer or
2.  Reed's invention is limited to a single computer.

However, to properly understand the heading reference to the paragraphs differentiating Reed from Anderson is necessary:

Unlike Reed, Anderson's mobile station needs to be outfitted with a very complex series of extra hardware and software and antenna equipment contained within Andersson's mobile station, and also requires an operative connection to the first computer in order to control the transmission power of the mobile station.  This comprises extra steps, equipment, and expense required by *Andersson*.  In turn *Andersson's* solution is a crude series of reactions to a mobile communications system problem, which in turn only serves to cause other problems within *Andersson's* mobile communications system, which *Andersson* refers to as "unfortunate".  Reed teaches a first computer that will improve communications with *Andersson's* mobile stations, without the requirement of all of *Andersson's* extra equipment. [21]

Accordingly, Anderson's mobile station requires "**extra hardware and software and antenna equipment** contained **within Andersson's mobile station**."  Reed differentiates by sating "[t]his comprises extra steps, equipment, and expense required by Andersson. In turn

---

[20] *See* ECF 244-3 from Cause No. 2:17-cv-00042 filed in the Eastern District of Texas, at TRX000237, Office Action Response dated September 28, 2012 (highlighting added) (attached as Exhibit B to the Declaration of William P. Ramey, III ("Ramey Decl.")).

[21] *See id.*

Andersson 's solution is a crude series of reactions to a mobile communications system problem, which in turn only serves to cause other problems within Andersson 's mobile communications system."  Reed then states that "Reed teaches a first computer that will improve communications with Andersson 's mobile stations, without the requirement of all of Andersson 's extra equipment."  Accordingly, Reed's first computer does not require extra hardware and software and antenna equipment within **the mobile station** (i.e., wireless device in Reed).

There is no disavowal of claim scope for "first computer."

This construction is further supported by the next paragraph.

> Reed's invention for it functionality requires only "a first computer".  Andersson, on the other side, cannot provide a location for the phone, without a second computer in the phone.  *Andersson* requires that the mobile device contain special equipment (first computer and second computer, and communication with a mobile device) in order to improve communication, e.g., *"each radio network controller (RNC) includes a network interface 52 for interfacing communications with various base stations."* [lines 57-59, col 7]. Furthermore, *"each base station includes a corresponding network interface 60 for* [22]

Again, in differentiating, Reed provides that Anderson requires a second computer in the phone (mobile station) to provide location for the phone.  There is no requirement of a second computer in the phone in Reed.

The next usage of "single" is in the following paragraph, in the same section:

---

[22] *See* Ex. B to the Ramey Decl. at TRX000237.

> *Andersson's* patent also requires an operative, two way connection (besides the voice call communication) between the base station and the wireless devise in order to control hardware in the wireless device from a remote location, in order improve communications. Reed offers a single computer, containing location and performance information about all wireless devices on the wireless communications network (without the need for special hardware in the phone, second computers, or a two way tuning communication with the wireless device).[23]

The paragraph begins with Reed's statement of the requirements of Anderson:

> . . . an operative two way connection between the base station and the wireless device to control hardware in the wireless device from a remote location[.]

Reed differentiates by providing that the invention offers a single computer without the need for special hardware in the phone, second computers, or two way tuning communication with the wireless device. Reed does not require special hardware in the phone, such as second computers or two way tuning communication. There is no express statement that Reed is a first single computer, rather Reed is differentiated on the basis that Reed does not require a computer in the wireless device.

Reed's functional differentiation of Anderson is that Reed does not require the CIR to be received from the mobile station. Reed monitors performance from the base station, not the mobile device.

| Reed *et al.* | Andersson *et al.* |
|---|---|
| Reed's first computer does not require that the CIR is received from the mobile station. Reed monitors the base station controller for performance data directly, without the extra steps and additional hardware and software required by *Andersson*, to send the CIR from his mobile station to the base station. | *"The base station detects at every time slot the carrier to interference ratio of the signal received from the mobile station."* [cited by the Examiner Marceau Milord in Non-Final Rejection dated 2007-10-02, Matsunga US Pat. 7,734,255, page 3-4]. |

[24]

---

[23] *See* Ex. B to the Ramey Decl. at TRX000238.

No differentiation is made that Reed requires a first single computer, rather no computer is required in the mobile device to transmit CIR to the first computer.  Reed only needs to communicate with the base station.

Moreover, at the time of the prosecution of the '320 patent, the patentee specifically addressed and removed any potential narrowing of the claim terms:

PRELIMINARY AMENDMENT UNDER 37 CFR 1.115

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

This Application is a Continuation of U.S. Patent Application Ser. No. 11/505,587, which issued as U.S. Patent 8,977,284 on March 10, 20105. In the above referenced parent Patent Application, Applicants made amendment, including an Examiner's Amendment, along with remarks, in order to obtain a Patent on subject matter the Examiner found to be allowable. The Applicant has not  acquiesced in any manner that the previously-presented and/or broader subject matter are not patentable over the prior art of record and reserve the right to present Claims to such broader subject matter, such as the Claims presented herein and hereby revoke any estoppel either express or that may be inferred by amendments and/or other actions taken in the above-referenced Parent U.S. Patent Application and its predecessors. [25]

Accordingly, Reed revoked any express or inferred estoppel for at least the '320 patent and all patents issuing thereafter. Therefore, the term "first computer" or "computer" is construed without reference to Amendments in the '284 patent file history and a proper construction is no construction as the term computer is a commonly understood term.

---

[24] *See* Ex. B to the Ramey Decl. at TRX000229.

[25] *See* Exhibit A, Preliminary amendment from file history of '320 patent, TRX000984-996, at TRX000984 (attached as Exhibit B to the Declaration of William P. Ramey, III).

## B.  SECOND COMPUTER[26]  / A SECOND COMPUTER[27]

| Claim Term | Traxcell's Construction | Defendants' Construction |
| --- | --- | --- |
| "second computer" / "a second computer" | "plain and ordinary meaning" | "second single computer" |

The prosecution statements on which the Court, in the *Huawei* cause,[28] based its inclusion of "single" to construction of first computer and computer neither referred to the "second computer" nor the actions performable by the second computer.[29]  Thus, the prosecution-statement-based limitation of "single" does not apply to "second computer."[30]

Because there is not evidence that the patent applicant clearly redefined (in the application or prosecution history) "second computer" or "a second computer," two easily understandable, unambiguous terms, they should simply be construed as "plain and ordinary meaning."[31]  A proposed construction narrowing a term from its plain and ordinary meaning should be rejected if the intrinsic evidence does not require the narrowing restriction.[32]  A

---

[26] This term is in claims of the '284 Patent and '320 Patent.

[27] This term is in claims of the '284 Patent, '320 Patent, and '024 Patent.

[28] Cause No. 2:17-cv-00042 filed in the Eastern District of Texas (hereafter "the *Huawei* cause."

[29] *Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*, No. 2:17-cv-00042-RWS-RSP, 2019 U.S. Dist. LEXIS 2130, at **20–27 (E.D. Tex. Jan. 7, 2019); September 28, 2012 Amendment and Response (ECF No. 244-3 in the *Huawei* cause) at 17, 18, 37, 38; '284-Patent (ECF No. 2-3) at Claims 6, 9, 10, 11, 12 (all of which recite a second computer); '320-Patent (ECF No. 2-2) at Claims 1, 4 (both of which recite a second computer).

[30] *Also see Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1290, 1291 (Fed. Cir. 2008) (holding that because nothing in the specification would limit "computer" to a single computer and the ordinary meaning of "computer" [the 5,319,776 patent issued in 1994 {*id.* at 1295}] was not limited to a single computer, the district court erred in restricting "computer" to a single computer).

[31] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **106, 108, 127 173, 174 (Payne, Mag.); *Traxxas*, 2017 U.S. Dist. LEXIS 162858, at *41 (Payne, Mag.).

[32] *Arthrex*, 2016 U.S. Dist. LEXIS 105750, at *127 (Payne, Mag.) (stating, "There is nothing in the claim language that *requires* [emphasis added]  the width to be the largest width.");  *Optis Cellular*, 2017 U.S. Dist. LEXIS 18191, at *27 (stating, "Defendants have pointed to no clear language in the intrinsic record of lexicography, disavowal, or disclaimer *mandating* [emphasis added]  that 'mapping' be limited to 'placing.'");  *Mobile Telecommc'ns, LLC v. T-Mobile USA, Inc.*, 78 F. Supp. 3d at 661 (stating, " . . . Defendants have failed to identify anything in the claims or the specification that *necessarily limit* [emphasis added] s the disputed term to . . ."); *see also PerdiemCo*, 2016 U.S. Dist. LEXIS 87927, at *90 (stating, "Plaintiff has not demonstrated that the existence of multiple 'levels' *necessarily requires* [emphasis added] a hierarchical organization.");  *Cellular Commc'ns

defendant proposing a different construction because of purported ambiguity bears the burden of

proving the ambiguity.[33] Rejection of Defendants' proposed construction and adoption of a

"plain and ordinary meaning" construction resolves the claim-construction dispute without need

for further construction of the term.[34]

## C.  A SECOND PROCESSOR[35]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "a second processor" | "plain and ordinary meaning" | "a processor within the wireless communications network" |

This term is an easily understandable, unambiguous term[36] that, thus, should simply be

construed as "plain and ordinary meaning."[37]  Defendants' proposed "within the wireless

communications network" seeks to impose a limitation not reflected by this claim language ("a

---

*Equipment*, 2016 U.S. Dist. LEXIS 174666, at **62, 63 (Payne, Mag.) (stating, "[T]he specification does not *limit* [emphasis added] the claim scope to 'resource blocks' (RBs), which are only one disclosed example.");  *Core Wireless Licensing S.a.r.l.*, 2015 U.S. Dist. LEXIS 150041, at *90 (Payne, Mag.)  (stating, "There is no *requirement* [emphasis added] in the claim that . . .").

[33] *Optis Cellular*, 2017 U.S. Dist. LEXIS 18191, at **91, 92 (stating, "Defendants have not demonstrated any lack of clarity of the actual claim language in light of the specification.");  *Freeny*, 2015 U.S. Dist. LEXIS 6377, at **52, 60, 68, 90 (Payne, Mag.) (stating, "Absent clear evidence to the contrary, the Court is hesitant to change the plain meaning of a term.");  *see also Applera*, 297 F. Supp. 2d at 455, 456; *Chamberlain*, 2017 U.S. Dist. LEXIS 53509, at *55.

[34] *See PerdiemCo,*, 2016 U.S. Dist. LEXIS 87927, at *64 (stating, "The Court therefore expressly rejects Defendants' indefiniteness arguments. No further construction is necessary.  [Citations and paragraph break omitted]. Defendants have cited *Maytag Corp. v. Electrolux Home Prods., Inc.*, 411 F. Supp. 2d 1008 (N.D. Iowa 2008), as authority for the proposition that construction is required because 'asserting that [the ordinary meaning of a term] should apply, without further construction, merely begs the question of what that meaning is.'  [Citations omitted]. *Maytag* is not binding authority and, moreover, here the Court has resolved the parties dispute by rejecting Defendants' indefiniteness argument and Defendants' argument that the breadth of the 'code' terms necessarily gives rise to a lack of reasonable certainty as to claim scope. [Paragraph break omitted]. The Court accordingly hereby construes **"user identification codes"** and **"authorized user identification code"** to have their **plain meaning**. [Court's original bolding].); *Optis Wireless*, 2018 U.S. Dist. LEXIS 7711, at **84, 115 (distinguishing *O2 Micro*))); *Optis Cellular*, 2017 U.S. Dist. LEXIS 18191, at **87, 88, 92 (distinguishing *O2 Micro*);  *Nokia Solutions & Network US*, 2017 U.S. Dist. LEXIS 79837, at *70 (distinguishing *O2 Micro*);  *Mobile Telecommc'n Techs., LLC v. Google Inc.*, 2016 U.S. Dist. LEXIS 174667, at **51, 52.

[35] This term is claims of the '388 Patent.

[36] *See Mallinckrodt, Inc. v. Masimo Corp.*, 254 F. Supp. 2d 1140, 1152 (C.D. Cal. 2003) (holding "processor" required no construction).

[37] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **106, 108, 127 173, 174 (Payne, Mag.); *Traxxas*, 2017 U.S. Dist. LEXIS 162858, at *41 (Payne, Mag.).

second processor").

Further, the intrinsic evidence cited by Defendant[38] does not inherently require all "second processor" be "within the wireless communications network."[39]

Further, Defendants' proposed addition of "within the wireless communications network" does not clarify but rather creates more ambiguity (E.g., what is "within" the network? Does a "processor" stop being a "processor" when it is "not within" the "network" and then returns to being a "processor" when it returns to being "within" the "network"—i.e., can a processing unit sometime be a "processor" and sometimes not be one? Can transfer of data [for a processor to process data, the data must be transferred to and from the processor] come from outside the "network?"). Defendants' proposed addition of the "within the wireless communications network" raises more questions than it answers (if it answers any at all).

Further, if the Court agrees the intrinsic evidence does not clearly redefine the term with a special meaning by lexicography or disavowal, then the Court's rejection of Defendants' proposed "within the wireless communications network" limitation along with a "plain and ordinary" construction would resolve the dispute of whether "a second processor" must be "within the wireless communications network."

---

[38] ECF No. 148-2 at 27.

[39] '388 Patent (ECF No. 2-5) at—as cited by Defendants—Figs.9– 12 and 27–29, including corresponding discussion thereof, and 5:54-7:56, 17:22-37:38, all claims, September 28, 2012 Office Action (ECF No. 244-3 in the *Huawei* case); *see also Arthrex*, 2016 U.S. Dist. LEXIS 105750, at *127 (Payne, Mag.) (stating, "There is nothing in the claim language that *requires* [emphasis added] the width to be the largest width."); *Optis Cellular*, 2017 U.S. Dist. LEXIS 18191, at *27 (stating, "Defendants have pointed to no clear language in the intrinsic record of lexicography, disavowal, or disclaimer *mandating* [emphasis added] that 'mapping' be limited to 'placing.'"); *Mobile Telecommc'ns, LLC v. T-Mobile USA, Inc.*, 78 F. Supp. 3d at 661 (stating, " . . . Defendants have failed to identify anything in the claims or the specification that *necessarily limit* [emphasis added] s the disputed term to . . ."); *see also PerdiemCo*, 2016 U.S. Dist. LEXIS 87927, at *90 (Payne, Mag.) (stating, "Plaintiff has not demonstrated that the existence of multiple 'levels' *necessarily requires* [emphasis added] a hierarchical organization."); *Cellular Commc'ns Equipment*, 2016 U.S. Dist. LEXIS 174666, at **62, 63 (Payne, Mag.) (stating, "[T]he specification does not *limit* [emphasis added] the claim scope to 'resource blocks' (RBs), which are only one disclosed example."); *Core Wireless Licensing S.a.r.l.*, 2015 U.S. Dist. LEXIS 150041, at *90 (Payne, Mag.) (stating, "There is no *requirement* [emphasis added] in the claim that . . .").

## D.  PERFORMANCE DATA[40]  / PERFORMANCE ISSUE[41] / PERFORMANCE[42]  /

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "performance data" | "performance data that is not determined by the wireless communications device." | "metric regarding performance of a particular wireless communications device that is not determined by the wireless communications device" |
| "performance issue" | "plain and ordinary meaning" | |
| "performance" | "plain and ordinary meaning" | |

This Court previously construed, in the *Huawei* case, "performance data" as "performance data that is not determined by the wireless communications device."[43] For the reasons explained by this Court in that opinion, "performance data" should be construed the same here.

"Performance issue" and "performance" are different terms than "performance data." Nor do the performance-data prosecution-disavowal statements on which this Court construed in part "performance *data*" as being "not determined by the wireless communications device" discuss or reference "performance issue" or "performance." Those prosecution statements do not clearly redefine "performance issue" or "performance."

Further, Defendants' attempt to construe terms with different words ("performance data," "performance issue," and "performance") with the same identical single construction (i.e., ""metric regarding performance of a particular wireless communications device that is not determined by the wireless communications device") violates the claim-construction canon that

---

[40] This term is in claims of the '284 Patent, '320 Patent, and '024 Patent.

[41] This term is in claims of the '320 Patent, and '024 Patent.

[42] This term is in claims of the '284 Patent, '320 Patent, and '024 Patent.

[43] *Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*, 2019 U.S. Dist. LEXIS 2130, at **27–30.

constructions that render claim language mere surplusage are disfavored.[44] In other words, Defendants seek a construction that renders the claim language "data" and "issue" such that "performance" has the same meaning of "performance data" and "performance."

Because there is no evidence the patent applicant clearly redefined "performance issue" or "performance" by lexicography or disavowal and these terms are easily understandable, unambiguous terms, the Court should construe each as "plain and ordinary meaning." By rejecting Defendants' proposed language and limitations and construing the terms as "plain and ordinary meaning," the Court would resolve the dispute raised by Defendants' proposed construction.

---

[44] *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993); *Beachcombers Int'l, Inc. v. Wildewood Creative Products, Inc.,* 31 F .3d 1154, 1162 (Fed. Cir. 1994) (holding that an interpretation that rendered claim language "superfluous" was presumptively unreasonable); *Becton Dickinson & Co.* v. *Tyco Healthcare Group, LP,* 616 F.3d 1249, 1257 (Fed. Cir. 2010) ("Claims must be 'interpreted with an eye toward giving effect to all terms in the claim.'" Quoting *Bicon, Inc. v. Straumann Co.,* 441 F.3d 945, 950 (Fed. Cir. 2006)).

E.  **MEANS FOR RECEIVING SAID PERFORMANCE DATA AND SUGGEST
    CORRECTIVE ACTIONS OBTAINED FROM A LIST OF POSSIBLE CAUSES FOR
    SAID RADIO TOWER BASED UPON THE PERFORMANCE DATA AND THE
    CORRESPONDING LOCATION ASSOCIATED WITH SAID AT LEAST ONE
    WIRELESS DEVICE[45]  /**

**MEANS FOR RECEIVING SAID PERFORMANCE DATA AND CORRESPONDING
LOCATIONS FROM SAID RADIO TOWER AND CORRECTING RADIO
FREQUENCY SIGNALS OF SAID RADIO TOWER, AND, WHEREBY SAID FIRST
COMPUTER CORRECTS THE RADIO FREQUENCY SIGNALS OF THE RADIO
TOWER IN ORDER TO IMPROVE COMMUNICATION WITH SAID WIRELESS
DEVICES[46]**

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "means for receiving said performance data and suggest corrective actions obtained from a list of possible causes for said radio tower based upon the performance data and the corresponding location associated with said at least one wireless device" / "means for receiving said performance data and corresponding locations from said radio tower and correcting radio frequency signals of said radio tower in order to improve communication with said wireless devices" | This is a §112, ¶6 term. Structure, material or acts: the algorithm disclosed in Fig. 38-A; Fig. 38-B; and, Fig. 38-C and described at col. 54, line 21 through col. 55, line 41. | These are 112 ¶ 6 claim elements 112 ¶ 6 structure(s), act(s), or material(s): the algorithm disclosed in Fig. 38-A and described at col. 54, line 21 through col. 55, line 2. 112 ¶ 6 structure(s), act(s), or material(s): The algorithm disclosed in Fig. 38-A and described at col. 54, line 21 through col. 55, line 2 |

The parties' proposed constructions differ in two ways:  after the proposed language "the
algorithm disclosed in," Traxcell's construction includes the following:

- "Fig. 38-B; and, Fig. 38-C;" and
- col. 55, lines 2–41 (both parties include col. 54, line 21 through col. 55, line 2; but
  Traxcell's construction of column and line designation ends at col. 55, line 41, rather than
  line 2 (which Defendants propose).

Traxcell's proposed construction tracks the Court's prior construction of the first terms

---

[45] This term is in claim 1 of the '284 Patent.

[46] This term is in claim 12 of the '284 Patent.

above (i.e., the term beginning "means for receiving said performance data and suggest . . . "),

which was an agreed construction in the *Huawei* cause.[47]

Figs. 38-B and Fig. 38-C alone show they clearly link or associate the shown structure to

the claim-recited function.[48] Likewise, the algorithm disclosed in column 55, lines 2 through 41

show clear linkage or association to the claim-recited function.[49] When those lines and figures

are read together, their clear linkage and association to the function are further strengthened.

Further, software is structure.[50]

## F.  ERROR CODE[51]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "error code" | "code generated that indicates irregular network problems" | "code indicating network fault" |

There is no evidence of the patent applicant defining by clear disavowal or lexicography

"error code" as "code indicating network fault."  Further, ''024 Claims 1,6, 15, and 21 refer to a

determination of "whether the error code indicates a performance *issue* [emphasis added]."

"Issue" and "fault" are not synonymous; they have different meanings and connotations. Those

references to "performance *issue*" are significantly different than the "network fault," proposed

---

[47] *Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*, 2019 U.S. Dist. LEXIS 2130, at *15 (at Table 2), *16.

[48] '284 Patent (ECF No. 2-3) at 41, 42.

[49] *Id.* at 119.

[50] *Smartflash LLC v. Apple Inc.*, 77 F. Supp. 3d 535, 561–63, Appendix C (E.D. Tex. 2014), *adopted*, 2015 U.S. Dist. LEXIS 17754 (E.D. Tex. Feb. 13, 2015) (the Magistrate holding "code . . . for [different functions]" is not a mean-plus-function term) (*see also* the Magistrate's discussion of *Versata Software, Inc. v. Sun Microsystems, Inc*., No. 2:06-cv-358, 2008 U.S. Dist. LEXIS 63645, 2008 WL 3914098, at *14 (E.D. Tex. Aug. 19, 2008)  [*id.* at *562–*63]); *Rockwell Automation, Inc. v. 3-S Smart Software Solutions, GmbH*, No. 2:15-CV-1543-JRG-RSP, 2016 U.S. Dist. LEXIS 138209, at *90 (E.D. Tex. Oct. 5, 2016) (Payne, Mag.) (citing, post-*Williamson*, *Affymetrix* with approval);  *Collaborative Agreements, LLC v. Adobe Sys.*, No. 15-cv-03853-EMC, 2015 U.S. Dist. LEXIS 161809, at*13 (N.D. Cal. Dec. 2, 2015).

[51] This term is in claims of the '284 Patent, '320 Patent, and '024 Patent.

by Defendants. Defendants' proposal redrafts, rather than clarifies, the term and should be rejected.

## G.  FAULTY[52]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "faulty" | "plain and ordinary meaning" | "defective" |

There is no evidence of the patent applicant defining a special meaning (i.e., meaning other than its plain and ordinary meaning) to this term by clear disavowal or lexicography. Further, this is a simple, straightforward term. Thus, this term should be construed as "plain and ordinary meaning.

Further, the danger of redefining a claim term's meaning is particularly heightened when—as here—a proposed construction uses words found nowhere in the patent specification.[53] Here, "defective" is found in none of the four patents-in-suit, much less in the ''025 Patent, the only patent having claims containing "faulty."

## H.  STATUS REQUEST[54]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "status request" | "request for location of a wireless device" | "request for location of a particular wireless device" |

---

[52] This term is in one or more claims of the '024 Patent.

[53] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at *173 (Payne, Mag.) (stating, "'[G]rooves' does not appear in the specification. The Court is not persuaded that it should redraft the claims to replace a term that is in the specification with a term that is not in the specification, particularly when doing so would not provide any additional clarity.");  *Freeny*, 2015 U.S. Dist. LEXIS 6377, at *73 (Payne, Mag.) (stating, "The specification never uses the term 'group' or 'encoded,' and the Court rejects Defendant's inclusion of these terms as not being necessary or warranted.").

[54] This term is in one or more claims of the '284 Patent.

"Status request" only appears in the Claims of the '284 Patent:  Claims 9, 11, and 12. While Claim 9 refers to the sending of location "for said at least two wireless devices in response to said status request," Claims 11 and 12 contain no similar reference nor any indication the Claim 11 and 12 "status request" necessarily requires the "particular" limitation Defendant proposes. Defendants' construction should be rejected.

## I.  ACCESS FLAG[55] and NO ACCESS FLAG[56]

| Claim Term | Traxcell's Construction | Defendants' Construction |
| --- | --- | --- |
| "access flag" | "flag permitting the tracking of one of the wireless devices"[57] | "flag permitting the tracking of the user" |

| Claim Term | Traxcell's Construction | Defendants' Construction |
| --- | --- | --- |
| "no access flag" | "flag preventing the tracking of the one of the wireless devices"[58] | "flag preventing the tracking of the user" |

"Access flag" and "no access flag" only appear in the '284-Patent and '320-Patent Claims; specifically, '284-Patent Claims 9, 11, and 12 and '320-Patent Claims 1 and 4. None of those Claims mention tracking of a "user" or indication of location of a "user;" rather, those claims discuss access flags and no access flags with regards to "indications of location" or "location" of "said at least two wireless devices" or "the at least one mobile wireless device."[59]

Defendants' "tracking of the user" limitation comes from a different patent: the '388 Patent, which does not have claims reciting "access flag" or "no access flag."[60] Rather, the flags

---

[55] This term is in one or more claims of the '284 Patent.

[56] This term is in claims of the '284 Patent and '320 Patent.

[57] Modified construction by dropping at least two.

[58] Modified construction by dropping at least two.

[59] '284 Patent (ECF No. 2-3) at Claims 9, 11, 12;  '320-Patent (ECF No. 2-2) at Claims 1, 4.

[60] '388 Patent (ECF No. 2-5) at all Claims.

recited in the '388-Patent Claims reciting "tracking of the user" are "preference flags," not "access flag[s]" nor "no access flag[s]."  Further, the ''388 Patent was filed significantly after the filings of the '284 and '320 Patents.[61] Thus, Defendants' attempt to redraft the "access flag" and "no access flag" claims by adding non-recited limitations from claims of a different and later-filed patent. The Court should reject Defendants' construction.

## J.  PREFERENCE FLAG[62]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "preference flag" | "flag that controls access to tracking" | "two or more flags to control access to the tracking of the user and access to the user's account" |

A proposed construction that tends to confuse rather than clarify should be rejected.[63] For example, a proposed construction that is redundant of claim language risks confusion and should be rejected.[64]  Here, Defendants' proposed language "of the user" is redundant of that exact language in the "preference flag" claims[65] and, thus, should be rejected because it does not clarify but rather risks confusion. Defendants' construction should be rejected.

---

[61] *Contrast* "filed" dates on the face of the '284 Patent (ECF No. 2-3), '320-Patent (ECF No. 2-2), and '388 Patent (ECF No. 2-5).

[62] This term is in one or more claims of the '388 Patent.

[63] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **173, 174 (Payne, Mag.);  *Nokia Solutions & Network US*, 2017 U.S. Dist. LEXIS 79837, at *40;  *Mobile Telecommc'ns, LLC v. T-Mobile USA, Inc.*, 78 F. Supp. 3d at 647; *Freeny*, 2015 U.S. Dist. LEXIS 6377, at **52, 53, 60–3, 69, 90, 91 (Payne, Mag.).

[64] *See Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **173, 174 (Payne, Mag.); *Core Wireless Licensing S.a.r.l. v. LG Elecs. Inc.*, No. 2:14-cv-0911-JRG-RSP, 2015 U.S. Dist. LEXIS 150041, at *148 (E.D. Tex. Nov. 5, 2015) (Payne, Mag.).

[65] '388 Patent (ECF No. 2-5) at Claims 1, 11, and 21 (in each instance "of the user" follows "tracking").

### III.   TERMS[66] DEFENDANTS ASSERT ARE INDEFINITE

## A. ROUTINELY[67]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "routinely" | "plain and ordinary meaning" | Indefinite. |

Defendants' P.R. 4-3 Disclosure does not explain or set forth the basis of Defendants' indefiniteness assertion.[68]

Terms like "customary," "normally," "conventional," "traditionally," and "standard" are not indefinite.[69] Defendants cannot show by clear and convincing evidence that a person of ordinary skill in the art would not understand the meaning of "routinely" in these patents.

---

[66] The issue is whether a *claim*, not a *term*, is indefinite. *See Aero Products Intern., Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1015–16 (Fed. Cir. 2006); 35 U.S.C. § 112, ¶ 2.

[67] This term is in claims of the '284 Patent, '320 Patent, and '024 Patent.

[68] Defendants' P.R. 4-3 Disclosure identification of terms (i.e., ECF No. 148-2) at 26.

[69] *Papst Licensing GmbH v. Apple Inc.*, No. 6:15-cv-01095, 2017 U.S. Dist. LEXIS 32379, at *39, 40 (E.D. Tex. Mar. 7, 2017) (see also cases cited therein).

## B.  ONE OF THE RADIO-FREQUENCY TRANSCEIVERS[70]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "one of the radio-frequency transceivers" | "plain and ordinary meaning" | Indefinite.<br>This phrase lacks antecedent basis and is indefinite under pre-AIA 35 U.S.C. 112, ¶ 2. Both claims 11 and 17 of the '024 Patent claim "multiple radio-frequency transceivers" and later refer to "one of the radio-frequency transceivers" (the phrase at issue) without specifying which one of the "multiple radio-frequency transceivers" the "one of the radio-frequency transceivers" must be. |

Defendants cannot meet their burden to prove by clear and convincing evidence the claims containing this term lacks antecedent basis and further is indefinite. Defendants cannot because this claim neither lacks an antecedent basis nor is indefinite.[71]

> As this Court explained in *Intellectual Ventures II LLC v. BITCO General Ins. Corp*.,
>
> Defendants assert that of the many "potential users" that the independent claim contemplates, the claim does not specify which one is "the particular user." However, the claim is not required to make such an identification. As presented in the claim, the "particular" user is merely one of the "one or more potential users." Defendants further assert that one cannot determine if the recited centralized access point is assigned to a potential user in the process of selection content or was already assigned to a user before then. Again, Defendants are adding limitations to the independent claim that are not recited nor required by the claim.[[72]]

Defendants cannot meet their burden to prove by clear and convincing evidence the claims containing this term lack antecedent basis and further are indefinite.

---

[70] This term is in one or more claims of the '024 Patent.

[71] *Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*, No. 2019 U.S. Dist. LEXIS 2130, at **33–39;  *Intellectual Ventures II LLC v. BITCO General Ins. Corp*., No. 6:15-CV-59, 2016 U.S. Dist. LEXIS 3299, at **50–52 (E.D. Tex. Jan. 11, 2016); *see also Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1568, 1575, 1576 (Fed. Cir. 1986) (holding that claim reciting in part "one of the seats" was not indefinite, although neither the Court nor the parties questioned the definiteness of that part of the claim).

[72] 2016 U.S. Dist. LEXIS 3299, at **51, 52.

## C.  THE SECOND RADIO FREQUENCY TRANSMITTER[73]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "the second radio-frequency transmitter" | "plain and ordinary meaning" | Indefinite.<br><br>This phrase lacks antecedent basis and is indefinite under pre-AIA 35 U.S.C. 112, ¶ 2. Both claims 11 and 17 of the '024 Patent claim "multiple radio-frequency transceivers" and later refer to "one of the radio-frequency transceivers" (the phrase at issue) without specifying which one of the "multiple radio-frequency transceivers" the "one of the radiofrequency transceivers" must be. |

The argument and legal authorities discussed in the preceding section addressing "one of the radio-frequency transceivers" likewise apply here. Defendants' which-specific-one argument fails. Defendants cannot meet their burden to prove by clear and convincing evidence the claims containing this term lack antecedent basis and further are indefinite.

## D.  CLAIM 1 PURPORTED INDEFINITENESS:   IN ORDER TO RESTRICT PROCESSING OF RADIO FREQUENCY SIGNALS FROM AT LEAST ONE OF SAID AT LEAST TWO WIRELESS DEVICES. . .  IN ORDER TO IMPROVE COMMUNICATION WITH AT LEAST ONE SAID WIRELESS DEVICE[74]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| in order to restrict processing of radio frequency signals from at least one of said at least two wireless devices . . . in order to | Not indefinite. | Indefinite.<br><br>This phrase contains terms that lack antecedent basis and is indefinite under pre-AIA 35 U.S.C. 112, ¶ 2. Claim 1 of the '284 Patent claims "at least two wireless devices" and later claims (in the phrase at issue) that processing of radio frequency signals is restricted from "at least one of said at least two wireless devices" without specifying which one of the "at least one of said at least two wireless devices" from which processing of radio frequency signals is restricted.<br><br>Further, claim 1 claims (in the phrase at issue) that |

---

[73] This term is in one or more claims of the '388 Patent.

[74] This term is in one or more claims of the '284 Patent.

| improve communication with at least one said wireless device | | communication is improved with "at least one said wireless device," and it is not clear whether such "said wireless device" means the "at least one of said at least two wireless devices" from which processing of radio frequency signals is restricted or the other one of the "two wireless devices." |
| --- | --- | --- |

Defendants have not proven by clear and convincing evidence the claim is indefinite because it purportedly does not specifically identify which of "at least one of said at least two wireless devices" has the recited restricting of RF-signals processing. As this Court previously explained, "Such specificity is not required to understand Claim 1 of the '284 Patent. There are multiple wireless devices, and the radiofrequency processing for at least one of them is restricted."[75]

Defendants also have not proven by clear and convincing evidence the claim is indefinite because of purported indefiniteness regarding the "at least one said wireless device" that is the target of communication improvement in the Claim-1 phrase "in order to improve communication with at least one said wireless device." Claim 1 recites (emphases added below):

- "at least two wireless devices;"
- "each **said** wireless device;"
- "at least one of **said** wireless device;"
- "at least one of **said** at least two wireless devices;" and
- "**said** at least one wireless device."

The first words following the transition "comprising:" in Claim 1 is "at least two wireless devices." Immediately following is ", each said wireless device." In ordinary parlance, "each" primarily refers to "every one of ***two or more*** [emphasis added] considered individually or one

---

[75] *Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*, at \*\*33–39; *see also Intellectual Ventures II*, 2016 U.S. Dist. LEXIS 3299, at \*\*50–52; *Orthokinetics*, 806 F.2d at 1568, 1575, 1576) (holding that claim reciting in part "one of the seats" was not indefinite, although neither the Court nor the parties questioned the definiteness of that part of the claim).

by one."[76] Thus, in "each said wireless device," "said wireless device" refers to wireless devices and "each" refers to one-by-one consideration of those devices. Further, "at least two wireless devices" is the antecedent" for "each said wireless device" (i.e. "each said wireless device" refers to each of the "at least two wireless devices." Thus, at this point in reading the claim, there are two groupings: (1) "at least two wireless devices" and (2) "each said wireless device" (of the at least two wireless devices).

The next phrase in question appearing in '284-Patent Claim 1 is "at least one **said** (emphasis added) wireless device." As discussed above, "said wireless device" appeared previously in the claim and by its inclusion in "each said wireless device" indicates refers to wireless devices (specifically, the wireless devices of the antecedent "at least two wireless devices"). Thus, as with "each said wireless device," "at least one said wireless device" is clear, refers to wireless devices of the "at least two wireless devices," and has "at least two wireless devices" as its antecedent basis. Thus, at this point in reading the claim, there are three clear groupings: (1) "at least two wireless devices;" (2) "each said wireless device" (of the at least two wireless devices) and (3) "at least one said wireless device" (of the at least two wireless devices).

The next phrase in question appearing is the fourth grouping of "at least one of **said** (emphasis added) at least two wireless devices." It is clear the previously recited grouping of "at least two wireless devices" is the antecedent. It is also clear the fourth grouping "at least one of said at least two wireless devices" is a subset of the first grouping "at least two wireless devices."

Thus, there are four clear groupings: (1) "at least two wireless devices;" (2) "each said wireless device" (of the at least two wireless devices); (3) "at least one said wireless device"[77]

---

[76] Dictionary.com (defining "each") *available at https://www.dictionary.com/browse/each*.

[77] "[**S**]aid [emphasis added] at least one said wireless device" is also recited in Claim 1 and clearly refers to the grouping "at least one said wireless device;" i.e., "said at least one said wireless device" and "at least one said wireless device" clearly refers to the same grouping. The only difference between the two terms is the addition of

(of the at least two wireless devices); and (4) "at least one of said at least two wireless devices;" as illustrated below (arrows used to point to the antecedent basis):



Thus, "at least one said wireless device" (of the at least two wireless devices) is at least one of the at least two wireless devices that are recited immediately after the transition "comprising." Definiteness does not require identification beyond this identification.[78] Thus, Defendants cannot prove by clear and convincing evidence that '284-Patent Claim 1 is indefinite because of purported indefiniteness regarding the "at least one said wireless device" that is the target of communication improvement in the Claim-1 phrase "in order to improve communication with at least one said wireless device." Examples of embodiments exemplifying eflecting the communicative improvement of at least one said wireless device of a group of at least two wireless devices are shown in the '284 Patent.[79]

---

"said" at the start of one. "The" or "said" at the start of a claim term is merely a reference back to the same claim term. *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).

[78] *See Traxcell Techs., LLC v. Huawei Techs. USA, Inc.*, 2019 U.S. Dist. LEXIS 2130, at **33–39 (discussing "one of the radio-frequency transceivers"); *Intellectual Ventures II*, 2016 U.S. Dist. LEXIS 3299, at **50–52; *see also Orthokinetics*, 806 F.2d at 1568, 1575, 1576 (Fed. Cir. 1986) (holding that claim reciting in part "one of the seats" was not indefinite, although neither the Court nor the parties questioned the definiteness of that part of the claim). Further, "the use of a definite article ('said' or 'the') to refer back to an initial indefinite article does not implicate, let alone mandate the singular" (*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)), the phrase carries the same numerosity as the referenced-to phrase (*id.* at 1342–43), e.g., if "the initial phrase carries no definitive numerosity, the anaphoric phrases [i.e., "the" and "said"] do not alter that meaning in the slightest." *Id.* at 1343.

[79] '284 Patent (ECF No. 2-3) at, e.g., 46:61–47:8 (i.e., column 46, line 61 through column 47, line 8); 54:8–12; 54:21–55:34;  59:37–43; 60:30–31;  62:60–65; 72:32–45; Fig. 38–A; Fig. 38-B.

### E. REFERENCING PERFORMANCE[80] / REFERENCING THE PERFORMANCE DATA[81]

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| "referencing performance" / "referencing the performance data" | "referring to performance / referring to the performance data" | Indefinite.<br><br>This phrase is indefinite under pre-AIA 35 U.S.C. 112, ¶ 2. It is not clear whether "referencing performance" in claim 1 requires the location of "at least one said wireless device on said wireless network" to be referenced with the corresponding performance of the "at least one said wireless device on said wireless network."<br><br>To the extent that Plaintiff argues that "referencing performance" does not require the location of "at least one said wireless device on said wireless network" to be referenced with the corresponding performance of the "at least one said wireless device on said wireless network," then this claim element is not adequately supported by the written description and/or is not commensurate in scope with the enabling disclosure, and is indefinite under pre-AIA 35 U.S.C. 112, ¶ 1. |

For the reasons set forth in the Court's prior ruling on this term in the *Huawei* case,[82] Defendants have failed to prove by clear and convincing evidence that the claims containing these terms are indefinite or that the claims containing these terms are not enabled.[83]

Further showing Defendants have failed to meet their clear-and-convincing burdens of proof is the fact that original claims are part of the original specification and, thus, can be self-enabling[84] (which Defendants do not address).

---

[80] This term is in one or more claims of the '284 Patent.

[81] This term is in claims of the '320 Patent and '024 Patent.

[82] *Traxcell Techs., LLC*, 2019 U.S. Dist. LEXIS 2130, at **40, 41 (E.D. Tex. Jan. 7, 2019)

[83] Enablement relates to claims, not terms. *See Martek Biosciences Corp. v. Nutrinova, Inc*., 579 F.3d 1363, 1378 (Fed. Cir. 2009); 35 U.S.C. §112 ¶1.

[84] *In re Gardner*, 480 F.2d 879 (C.C.P.A. 1973).

**F. WHEREIN THE FIRST COMPUTER PROVIDES ACCESS TO THE INDICATION OF LOCATION TO THE SECOND COMPUTER IF THE NO ACCESS FLAG IS RESET AND DENIES ACCESS TO THE INDICATION OF LOCATION TO THE SECOND COMPUTER IF THE NO ACCESS FLAG IS SET[85]  /**

**PROVIDING ACCESS FROM THE FIRST COMPUTER TO THE INDICATION OF LOCATION TO THE SECOND COMPUTER IF THE NO ACCESS FLAG IS RESET; AND THE FIRST COMPUTER DENYING ACCESS TO THE INDICATION OF LOCATION TO THE SECOND COMPUTER IF THE NO ACCESS FLAG IS SET[86]**

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| **wherein the first computer provides access to the indication of location to the second computer if the no access flag is reset and denies access to the indication of location to the second computer if the no access flag is set [ / ]**<br><br>**providing access from the first computer to the indication of location to the second computer if the no access flag is reset; and the first computer denying access to the indication of location to the second computer if the no access flag is set** | "plain and ordinary meaning" | Indefinite |

Defendants' P.R. 4-3 Disclosure does not explain or set forth the basis of Defendants' indefiniteness assertion. [87]   Thus, any consideration or ruling of indefiniteness here would violate Traxcell's constitutional due-process rights to adequate notice and adequate opportunity to be heard. [88]

---

[85] This term is one or more claims of the '320 Patent.

[86] This term is one or more claims of the '320 Patent.

[87] Defendants' P.R. 4-3 Disclosure identification of terms (i.e., ECF No. 148-2) at 12.

[88] *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 315 (1950); *Garfield v. U.S.*, 211 U.S. 249, 262 (1908); U.S. Const. Amendments V, XIV;  Tex. Const. Art. I, § 19; *Rhine v. Casio, Inc., 183 F.3d 1342, 1346 (Fed. Cir. 1999)* ("Casio cannot avoid a full-blown validity analysis by raising the specter of invalidity during the claims construction phrase").

Defendants cannot show by clear and convincing evidence that a person of ordinary skill in the art would not understand the scope of the claims containing the above term.

### G.  '284-PATENT CLAIM 12

| Claim Term | Traxcell's Construction | Defendants' Construction |
|---|---|---|
| claim 12 of the '284 Patent | Not indefinite. | Indefinite.<br><br>Claim 12 of the '284 Patent is directed to both "[a] machine and process for tuning a wireless network." Claim 12 includes method steps of using the claimed "machine," e.g., "wherein a user of one of said at least two wireless devices is able to set a no access flag within the memory of said first computer."<br><br>A single claim that claims both an apparatus and the method steps of using the apparatus is indefinite under pre-AIA 35 U.S.C. 112, ¶ 2.  [Citation omitted]. |

For the reasons set forth in the Court's prior ruling on this term in the *Huawei* case,[89] Defendants have failed to prove by clear and convincing evidence that the claims containing these terms are indefinite.

### IV.   CONCLUSION

Plaintiff Traxcell's claim constructions should be adopted because the constructions follow proper claim-construction principles.

---

[89] *Traxcell Techs., LLC*, 2019 U.S. Dist. LEXIS 2130, at **47–52.

Respectfully submitted,

**Ramey & Schwaller, LLP**

By: /s/ William P. Ramey, III
    William P. Ramey, III
    Texas Bar No. 24027643
    5020 Montrose Blvd., Suite 750
    Houston, Texas 77006
    (713) 426-3923 (telephone)
    (832) 900-4941 (fax)
    wramey@rameyfirm.com

**Hicks Thomas, LLP**

John B. Thomas (Co-Counsel)
Texas Bar No. 19856150
700 Louisiana Street, Suite 2000
Houston, Texas 77002
(713) 547-9100 (telephone)
(713) 547-9150 (fax)
jthomas@hicks-thomas.com

***Attorneys for Traxcell***

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served today, February 13, 2019, with a copy of the foregoing via the Court's CM/ECF system.

/s/ William P. Ramey, III
William P. Ramey, III