**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **TRAXCELL TECHNOLOGIES, LLC.,** )<br>**Plaintiff,** )<br> )<br>v. )<br> )<br>**AT&T CORP. AND AT&T MOBILITY** )<br>**LLC,** )<br>**Defendants.** )<br>_____ )<br>v. )<br> )<br>**SPRINT COMMUNICATIONS,** )<br>**COMPANY, LP; AND SPRINT** )<br>**SPECTRUM LP, AND SPRINT** )<br>**SOLUTIONS, INC.** )<br> )<br>**Defendants.** ) | **NO. 2:17-cv-00718-RWS-RSP**<br>**(CONSOLIDATED LEAD CASE)**<br><br><br><br><br><br>**NO. 2:17-CV-00719-RWS-RSP** |

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT SPRINT TO PRODUCE DOCUMENTS AND TESTIMONY RELATED TO ITS D-SON COMPONENTS AND FINANCIAL INFORMATION RELATED THERETO**

1

Traxcell asserted infringement against Sprint for certain claims of the '024, '284, '320, and the '388 patents that include computer elements satisfied by the Samsung SON components and directional assistance components in Sprint's wireless network. This is explicitly detailed in Traxcell's infringement contentions.[1] The contentions specifically refer to the Samsung SON functionality, which is a SON or D-SON functionality.[2] Nowhere in the contentions do they mention a Cisco central SON or C-SON functionality,[3] as confirmed by Sprint's witness.[4] Traxcell served these contentions back in August 2018.

Recently, Traxcell took the 30(b)(6) deposition of Sprint's designee Eshwar Narava on a variety of topics including the alleged technical and economic benefits of the Samsung D-SON functionality admittedly used in Spring's systems. Unfortunately, Mr. Narava was wholly unprepared to provide corporate testimony on this subject. Instead, Sprint offered Mr. Narava to testify regarding a different system—the Cisco C-SON system—that Traxcell never identified in its contentions as meeting any of the elements of the asserted patent claims.[5] Further, Sprint failed to produce categories of documents that would tend to show the alleged technical and economic benefits of the Samsung D-SON functionality described in Traxcell's infringement contention.[6] These categories include:

1. Production related to the benefits received by Sprint for utilizing the SON system;

2. Capital expenditures for the SON equipment used by Sprint, including but not limited to the items on Exhibits A-E of Traxcell's Infringement contentions;

3. Operational expenditures for Sprint's wireless network utilizing SON, including, but not limited to the costs for the items on Exhibits A-E of Traxcell's Infringement contentions;

---

[1] *See* Declaration of William P. Ramey, III ("Ramey Decl.") at ¶17.
[2] *See id.*
[3] *See id.* at ¶18.
[4] *See id.* at ¶19.
[5] *See id.* at ¶20.
[6] *See* Certificate of Conference *infra*.

1

4. Reasons Sprint uses a SON network;

5. How much did Sprint pay to obtain SON software licenses? What is the licensing structure (e.g., subscription licenses, perpetual licenses, etc.)? What is the pricing structure and dollar amounts (e.g., cost per cell, etc.)?

6. What is the extent to which Sprint has deployed SON on its network (e.g., what percentage of cells, geographic areas, etc.)? For which network technologies has Sprint implemented SON (i.e., 2G, 3G, LTE, 5G, etc.)?

7. How has Sprint quantified the benefits associated with implementing SON, in terms of:
    a. Network cost savings (CAPEX, such as reduced spending on cell towers and base stations, and OPEX, such as reduced network operating expenses)?
    b. Improved quality of service (e.g., reduction in dropped calls, improvement in call quality, improvement in customer satisfaction)?

8. Monies or other benefits received by Sprint for the items on Exhibits A-E of Traxcell's Infringement contentions;

9. Monies or other benefits received by Sprint form the sale or use of location information related to users of its wireless network (Claim 12 of the '284 and all claims of the '320); and,

10. Monies or other benefits received by Sprint form the sale of wireless devices (Claims of the '388).

Traxcell's damages experts have informed counsel that they need this information to develop the best supported damages opinion they can.[7] More specifically, the experts require documents quantifying the benefits of the D-SON functionality and the results of testing done by Sprint on the SON implementation. Without this information, Traxcell's experts may not be able to draft a comprehensive opinion.

Sprint has no good excuse for failing to provide these documents or preparing a witness to testify regarding their Samsung D-SON system, which is plainly identified in Traxcell's infringement contentions. Accordingly, Traxcell moves to compel Sprint to prepare a witness to testify in response to Traxcell's topics as they apply to the Samsung D-SON and, prior to that,

---

[7] *See* Ramey Decl. at ¶4.

produce documents reflecting the quantifiable benefits and testing on that system by Sprint. This material is relevant to the issues in the case and should pose no undue burden on Sprint to produce.

Consistent with Eastern District of Texas General Order 14-3 ("General Order Regarding Track B Initial Patent Case Management Order") at Track B Initial Patent Case Management Order, ¶ 2 ("Initial Disclosures and Summary Sales Information"), the Court in the present case more than 12 months ago ordered the production of "all documents, electronically stored information, and tangible things . . . relevant to the pleaded claims or defenses[.]"[8] Further, the courts have repeatedly held that a patent plaintiff is entitled to documents evidencing underlying financial information.[9] Yet, Sprint did not produce documents or testimony related to crucial damages categories.

In response to requests for production of documents and testimony on the technical and economic benefits of the Samsung D-SON components, Sprint raised the meritless and irrelevant argument that it provided testimony regarding a centralized SON system that is at issue *in other cases.* This has nothing to do with the actual components that Traxcell explicitly identified, i.e. the Samsung D-SON components, in Traxcell's infringement contentions served on Sprint *in this case.* Thus, the Court should reject Sprint's stated basis for refusing production on the technical and economic benefits and testing results regarding the Samsung D-SON system.

The Declaration of William P. Ramey, III details an e-mail chain from June 11, 2019 through June 12, 2019.

On June 11, 2019 Traxcell e-mailed Sprint's counsel to let them know what Plaintiff

---

[8] May 4, 2018 Discovery Order (Doc. No. 44) at ¶ 3(b). Additionally, Traxcell served three sets of requests for production including requests directed to damages related evidence.
[9] *See Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 194609, at *4–10 (D. Co. Nov. 28, 2017*).*

contended was missing.

To begin the e-mail, Traxcell informed Sprint the categories of documents it contends are missing from production. Sprint responded with the bold text below, and Traxcell responded to Sprint with the red text. An extract of the e-mail exchange is presented below:[10]

1. Production related to the benefits received by Sprint for utilizing the SON system (the documents you identified are quantified);

   **Sprint has produced such documents regarding SON generally, as we indicated to you in previous correspondence of May 6.** *See, e.g.,* **SPTRXCL03000001- SPTRXCL03000021; SPTRXCL03000331- SPTRXCL0300352; SPTRXCL03000353 - SPTRXCL0300375; SPTRXCL03000802 - SPTRXCL0300827; SPTRXCL03000828 - SPTRXCL0300853; SPTRXCL03000854 - SPTRXCL0300858; SPTRXCL03001191 - SPTRXCL03001259; SPTRXCL03004978 - SPTRXCL03005048. Moreover, with respect to the specific Samsung Smart SON and/or CognitiV Analytics accused in Traxcell's infringement contentions, we have confirmed we do not use such software and thus do not have responsive documents.**

2. Capital expenditures for the SON equipment used by Sprint, including but not limited to the items on Exhibits A-E of Traxcell's Infringement contentions (we need to know the cost of Samsung Base Stations and also separately its associated SON software cost among other issues. The pages you identified do not provide this information);

   **Sprint has produced agreements between Sprint and Samsung as mentioned above and identified to you in our correspondence in May. To our knowledge, there is no separate line item cost for "SON equipment". Moreover, with respect to the specific Samsung Smart SON and/or CognitiV Analytics accused in Traxcell's infringement contentions, we have confirmed we do not use such software and thus do not have responsive documents.**

3. Operational expenditures for Sprint's wireless network utilizing SON, including, but not limited to the costs for the items on Exhibits A-E of Traxcell's Infringement contentions (you identified no OPEX);

   **Sprint has produced agreements between Sprint and Samsung as mentioned above and identified to you in our correspondence in May, as well as numerous other financial documents.** *See, e.g.,* **SPTRXCL02015222; SPTRXCL02007862 - SPTRXCL02007895; SPTRXCL02007896 - SPTRXCL02007951; SPTRXCL02007952 - SPTRXCL02007977; SPTRXCL02007978 - SPTRXCL02008006; SPTRXCL02008007 - SPTRXCL02008010; SPTRXCL02008011 - SPTRXCL02008038; SPTRXCL02008039 - SPTRXCL02008042. Moreover, with respect to the specific Samsung Smart SON and/or CognitiV Analytics accused in Traxcell's infringement contentions, we have confirmed we do not use such software and thus do not have responsive documents.**

4. Reasons Sprint uses a SON network (we need a witness to clarify);

   **Sprint has produced such documents as indicated in our previous correspondence of May 6 and our corporate representative likewise addressed such issues in the deposition.** *See, e.g.,* **SPTRXCL03000001- SPTRXCL03000021; SPTRXCL03000331- SPTRXCL0300352; SPTRXCL03000353 - SPTRXCL0300375; SPTRXCL03000802 - SPTRXCL0300827; SPTRXCL03000828 - SPTRXCL0300853; SPTRXCL03000854 - SPTRXCL0300858; SPTRXCL03001191 - SPTRXCL03001259; SPTRXCL03004978 - SPTRXCL03005048. Moreover, with respect to the specific Samsung Smart SON and/or CognitiV Analytics accused in Traxcell's infringement contentions, we have confirmed we do not use such software and thus do not have responsive documents.**

5. How much did Sprint pay to obtain SON software licenses? What is the licensing structure (e.g., subscription licenses, perpetual licenses, etc.)? What is the pricing structure and dollar amounts (e.g., cost per cell, etc.)?

   **Sprint has produced agreements between Sprint and Samsung as mentioned above and identified to you in our correspondence in May. To our knowledge, there is no separate line item cost for "SON Software". Moreover, with respect to the specific Samsung Smart SON and/or CognitiV Analytics accused in Traxcell's infringement contentions, we have confirmed we do not use such software and thus do not have responsive documents.**

---

[10] Taken from a June 11, 2019 e-mail at pp. 5-7; *See* Ramey Decl. at ¶21.

6. ~~What SON modules were licensed? What SON modules have been implemented on Sprint's network?~~ [11]
7. What is the extent to which Sprint has deployed SON on its network (e.g., what percentage of cells, geographic areas, etc.)? For which network technologies has Sprint implemented SON (i.e., 2G, 3G, LTE, 5G, etc.)?

   **Sprint has produced agreements between Sprint and Samsung as mentioned above and identified to you in our correspondence in May. These topics were likewise covered in the corporate deposition. Moreover, with respect to the specific Samsung Smart SON and/or CognitiV Analytics accused in Traxcell's infringement contentions, we have confirmed we do not use such software and thus do not have responsive documents.**

8. ~~How did Sprint make the internal decision to purchase SON software licenses? Where are the documents associated with that decision (e.g., capital budget/purchase approvals; Sprint's internal NPV, ROI, or other financial analyses justifying its purchasing decision)?~~
9. How has Sprint quantified the benefits associated with implementing SON, in terms of:
   a. Network cost savings (CAPEX, such as reduced spending on cell towers and base stations, and OPEX, such as reduced network operating expenses)?
   b. Improved quality of service (e.g., reduction in dropped calls, improvement in call quality, improvement in customer satisfaction)?
10. ~~Has Sprint entered into any patent licenses associated with network optimization technology?~~
11. Monies or other benefits received by Sprint for the items on Exhibits A-E of Traxcell's Infringement contentions;
12. Monies or other benefits received by Sprint form the sale or use of location information related to users of its wireless network (Claim 12 of the '284 and all claims of the '320); and,
13. Monies or other benefits received by Sprint form the sale of wireless devices (Claims of the '[388).

   **Sprint has previously confirmed to you that it receives no "monies" from any SON products, nor for Google Maps. Sprint has produced documents regarding revenue related to the sale of wireless devices as well as other financial documents, as previously confirmed and discussed in corporate depositions. *See, e.g.,* SPTRXCL02015222; SPTRXCL02007862 - SPTRXCL02007895; SPTRXCL02007896 - SPTRXCL02007951; SPTRXCL02007952 - SPTRXCL02007977; SPTRXCL02007978 - SPTRXCL02008006; SPTRXCL02008007 - SPTRXCL02008010; SPTRXCL02008011 - SPTRXCL02008038; SPTRXCL02008039 - SPTRXCL02008042 Sprint has also generally produced documents regarding SON systems, including any alleged benefits from using SON systems. *See, e.g*., SPTRXCL03000001- SPTRXCL03000021; SPTRXCL03000331- SPTRXCL0300352; SPTRXCL03000353 - SPTRXCL0300375; SPTRXCL03000802 - SPTRXCL0300827; SPTRXCL03000828 - SPTRXCL03000853; SPTRXCL03000854 - SPTRXCL0300858; SPTRXCL03001191 - SPTRXCL03001259; SPTRXCL03004978 - SPTRXCL03005048. Moreover, with respect to the specific Samsung Smart SON and/or CognitiV Analytics accused in Traxcell's infringement contentions, we have confirmed we do not use such software and thus do not have responsive documents.**

Throughout the meet and confer, Plaintiff maintained that Sprint had not produced the requested documents.[12]

Traxcell requires the following subset of the information requested above and a witness (Traxcell includes what Sprint has produced and Sprint's response concerning further production):

1. Sprint's CAPEX associated with its Samsung 3G and LTE base stations, including eNodeBs, other RAN, and backhaul equipment broken out;
   - Sprint's counsel said we have the 10k's which they believe provides enough detail. However, the 10k's have all-encompassing numbers and estimates using that data will be very rough. Further, the data Sprint produced is worthless as it only goes through 2014, and the 4G spending they provided was only from 2007-2008.[13]

---

[11] The items crossed out are items Sprint eventually produced or were discussed in deposition.
[12] *See* Ramey Decl. at ¶5.
[13] *See id.* at ¶7.

2. Sprint's OPEX associated with its Samsung 3G and LTE base stations, including RAN and backhaul broken out;
    - At the meet and confer Sprint's counsel stated that they were not sure Sprint maintained the data in a form we could use. Traxcell requests the data in whatever form Sprint regularly maintains it.[14]

3. All documents associated with testing of Samsung D-SON on Sprint's network, including reporting on changes in throughput/network efficiency, QoS, and all other KPIs;
    - At the meet and confer Sprint's counsel stated that they were not sure Sprint maintained the data. Traxcell requests the data in whatever form Sprint regularly maintains it.[15]

4. Data regarding the volume of uplink and downlink traffic on Sprint's 3G and LTE networks (including breakout of voice and data traffic);
    - A 30(b)(6) witness exhibit, Gilbert Depo Exhibit 201, has traffic volumes for a small number of devices on Sprint's network (mostly Samsung devices, plus a Kyocera, LG, and BlackBerry device). No Apple devices, other LG devices, or other OEMs. No other traffic data was produced. Further, the small portion of traffic data provided is not quantified as uplink/downlink or on which technology. Traxcell requests the data in whatever form Sprint regularly maintains it.[16]

5. Sprint's spending on Samsung D-SON;
    - Sprint's counsel stated that they could not understand our infringement contentions and therefore did not know what to produce. We were further informed to use the 10k's, but the 10k's lack detail. [17]

6. Sprint's revenues from 3G and LTE data services;
    - Sprint produced total revenue but not average revenue per MB of data.[18] Gilbert testified Sprint keeps this data.[19]

7. Gilbert Depo Exhibit 201, prepared on an annual basis from 2015 to present, and including all devices on Sprint's 3G and LTE networks, not just Samsung devices and one BlackBerry device. This includes the number of subscribers associated with each device, as well as data usage.
    - Sprint has not indicated they will produce more.[20]

8. Sprint's wireless income statement, with breakdown of revenues for voice, data, other services, and devices, as well as a breakdown of network operating costs;
    - Sprint has not produced.[21]

---

[14] *See* Ramey Decl. at ¶8.
[15] *See id.* at ¶9.
[16] *See id.* at ¶10.
[17] *See id.* at ¶11.
[18] *See id.* at ¶12.
[19] *See id.* at ¶22.
[20] *See id.* at ¶13.
[21] *See id.* at ¶14.

9. Sprint's revenues, costs, and profits associated with location-based advertising programs; and
    - Sprint has not produced.[22]

10. Sprint's sales of 3G and LTE smartphone devices.
    - Sprint has only produced those devices in Gilbert Depo Ex. 201.[23]

In an effort to avoid motion practice, Plaintiff's counsel requested from the 30(b)(6) witnesses produced whether they had any information related to the subject matter Plaintiff seeks to compel. Both witnesses stated that they did not have any of this information.[24]

At the meet and confer, Sprint represented that they had no further documents to produce but they would go back to see if Sprint had other documents. Plaintiff's counsel offered to not file the motion to compel on the 13th if Sprint indicated that further production is forthcoming. As of the 14th, Sprint has not indicated any further production is forthcoming[25] and thus Plaintiff is required to file this motion to compel to obtain necessary discovery that Sprint should have automatically produced.

Sprint should be ordered to produce within 14 days of the Order all documents and testimony relating to the categories of information above. Moreover, Sprint's refusal to comply with the Local rules and Plaintiff's requests is designed to delay and raise the cost of this litigation and Sprint should be sanctioned in an amount equal to the extra attorney's fees and expert fees required to address the lack of production.

Respectfully submitted,

**Ramey & Schwaller, LLP**

By: /s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 750

---

[22] See Ramey Decl. at ¶15.
[23] See id. at ¶16.
[24] See id. at ¶23.
[25] See id. at ¶6.

Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

**Hicks Thomas, LLP**

John B. Thomas (Co-Counsel)
Texas Bar No. 19856150
700 Louisiana Street, Suite 2000
Houston, Texas 77002
(713) 547-9100 (telephone)
(713) 547-9150 (fax)
jthomas@hicks-thomas.com

**Attorneys for Traxcell**

**CERTIFICATE OF CONFERENCE**

I confirm that on June 13, 2019, at 10:00 am, I conferred with counsel for Sprint by phone. On the call were Tyler VanHoutan, Justin Lowery and local counsel Brock Weber. The call lasted about 48 minutes. During the call, I discussed the categories of documents we needed to be produced. Mr. Lowery stated that he believed we had enough production for our case and specifically stated that he did not believe we needed a new witness. I countered that we did not have what we needed and that the witness produced for the SON deposition was produced for a system we did not accuse of infringing.[26] No agreement on production of documents or a witness could be reached. Greater detail from the call can be found in this motion. At the conclusion of the call I informed Sprint's counsel that we would not file the motion to compel on the 13th to provide a chance for Sprint to produce more documents. However, as of the 14th, at the time of the filing of this motion, no further documents have been produced, thus requiring this motion to

---

[26] *See* Ramey Decl. at ¶24.

compel.

/s/ William P. Ramey, III
William P. Ramey, III

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served today, June 14, 2019, with a copy of the foregoing via the Court's CM/ECF system.

/s/ William P. Ramey, III
William P. Ramey, III