# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TRAXCELL TECHNOLOGIES, LLC., <br> *Plaintiff*, <br> v. <br> AT&T CORP. and AT&T MOBILITY LLC, | Case No. 2:17-cv-00718-RWS-RSP <br> LEAD CASE |
| SPRINT COMMUNICATIONS COMPANY, LP, SPRINT SPECTRUM, LP, and SPRINT SOLUTIONS, INC., | Case No. 2:17-cv-00719-RWS-RSP <br> CONSOLIDATED CASE |
| VERIZON WIRELESS PERSONAL COMMUNICATIONS, LP, <br> *Defendants*. | Case No. 2:17-cv-00721-RWS-RSP <br> CONSOLIDATED CASE |

## **MEMORANDUM AND ORDER**

Before the Court is Traxcell Techonologies, LLC's Daubert Motion to Exclude Testimony of Verizon's Designated Experts Dr. Shoemake and Mr. Rysavy. (Dkt. No. 309.) Traxcell argues that several different opinions presented within Dr. Shoemake's and Mr. Rysavy's reports should be excluded. First, Traxcell argues that Dr. Shoemake improperly reads a limitation into Claims 1–11 of the '388 Patent that the second processor must be in the network. (Dkt. No. 309 at 3–4, 11–12.) Second, Traxcell argues that Dr. Shoemake improperly reads a requirement into the '388 Patent claims that the preference flag must be set on the network side or on the device side. (*Id*. at 4–5, 12.) Third, Traxcell argues that Dr. Shoemake's apportionment analysis is not adequately supported for various reasons. (*Id*. at 7–10, 13–14.) Fourth, Traxcell argues that Rysavy provides improper interpretations of the "location" term that conflict with the Claim Construction Order ("Markman Order"). (*Id*. at 6–7, 12–13.)

After consideration, the Court **DENIES** Traxcell's Motion. The Court concludes that Dr. Shoemake's and Rysavy's opinions do not contradict the Markman Order and that any criticisms raised by Traxcell for Dr. Shoemake's apportionment opinions are better suited for cross-examination.

### I. Shoemake's interpretation that the second processor must be in the network will not be excluded.

Traxcell argues that Dr. Shoemake improperly reads a limitation into Claims 1–11 of the '388 Patent that the second processor must be in the network. (Dkt. No. 309 at 3–4, 11–12.) Traxcell argues that this interpretation conflicts with the Markman Order and that this interpretation should therefore be excluded. (*Id.* at 11–12.) Thus, the question here is whether Dr. Shoemake's opinion conflicts with the Markman Order. The Court concludes that it does not.

The Court previously construed the "second processor" term. (Dkt. No. 171 at 51–53.) The Court concluded that "it is clear from the claim language the 'second processor' of [Independent Claims 1 and 11] is within the wireless network." (*Id.* at 53.) Because the surrounding claim language made it clear that the second processor was within the wireless network, the Court concluded that "[t]his suggests that 'a second processor' is not inherently 'within the wireless communications network.'" (*Id.* (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*) (noting that the use of the term "steel baffles" "strongly implies that the term 'baffles' does not inherently mean objects made of steel")).) Thus, because of the clarity within the surrounding claim language that the claimed second processor was in the wireless network, there was no need to inject additional limitations into the second processor term.

Accordingly, the Court **DENIES** Traxcell's Motion on this ground.

### II. Shoemake's opinion that the preference flag must be communicated to the wireless network will not be excluded at this time.

Traxcell argues that Dr. Shoemake improperly reads a requirement into the '388 Patent claims that the preference flag must be set on the network side or on the device side. (*Id*. at 4–5, 12.) Verizon states that "Dr. Shoemake explained in detail and at length at his deposition that the mobile device setting Dr. Helgert has opined meets the 'preference flags' limitation would have to be communicated to the 'second processor' given the plain and ordinary meaning of the claims." (Dkt. No. 322 at 5.) Verizon therefore argues that "Traxcell has offered no explanation why these opinions in any way conflict with the [Markman Order]." (*Id*.)

The critical issue here is whether Dr. Shoemake's opinion on this issue conflicts with the Markman Order. "Expert opinions that contradict or disregard a court's claim constructions should be excluded." *Genband US LLC v. Metaswitch Networks Corp*., No. 2:14-CV-33-JRG-RSP, 2016 WL 3475688, at *4 (E.D. Tex. Jan. 7, 2016) (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012) ("expert testimony [that] ignored the court's claim construction 'is irrelevant to the question of infringement' and is inadmissible under Daubert"); *Cordis Corp. v. Boston Sci. Corp*., 561 F.3d 1319, 1357–58 (Fed. Cir. 2009)). This is an inquiry of substance rather than form. *Id*. A "failure to use the district court's exact words does not change the substance of [an expert's] testimony or render it inapplicable." *Id*. (citing *Innogenetics, N.V. v. Abbott Labs*., 512 F.3d 1363, 1378 (Fed. Cir. 2008)).

The Court concludes that Dr. Shoemake's opinion on this issue does not conflict with the Markman Order. The Court construed "preference flags" to mean "two or more flags to control access to tracking of the user." (Dkt. No. 171 at 55.) The Court did not provide any construction for the question of whether the preference flags must be set within or communicated to the second processor as this issue was not presented to the Court for construction. Thus, Shoemake's opinion with respect to this question does not conflict with any construction provided by the Court. Instead,

Dr. Shoemake's construction is based on his understanding of the plain and ordinary meaning of the claims. (Dkt. No. 322 at 5.) Because Dr. Shoemake's opinion has not been shown to conflict with any of the Court's constructions, Court will not strike Shoemake's opinions at this time.

For these reasons, the Court **DENIES** Traxcell's Motion on this ground.

### III. The Court will not exclude any opinion within Dr. Shoemake's apportionment analysis.

Traxcell argues that Dr. Shoemake's apportionment opinions should be excluded because he is not sufficiently qualified and because his methods are unreliable. (Dkt. No. 309 at 7–10, 13–14.) After consideration, the Court will not exclude any of Dr. Shoemake's opinions related to his apportionment analysis because Dr. Shoemake is sufficiently qualified and because his opinions are sufficiently reliable.

The Court concludes that Dr. Shoemake is sufficiently qualified. Traxcell argues that Dr. Shoemake reached his conclusions "even though he is admittedly not a lawyer or expert in customer surveys or marketing." (Dkt. No. 309 at 9.) However, Dr. Shoemake has a Ph.D in Electrical Engineering. (Dkt. No. 322-4 at App'x A.) Between his education and his experience, Dr. Shoemake is sufficiently qualified to provide opinions on a technical apportionment analysis.

The Court also concludes that the methods employed by Dr. Shoemake in reaching his opinions are sufficiently reliable. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). To the extent that Dr. Shoemake's analysis has any flaws, Traxcell is free to address these issues during cross-examination. However, none of the concerns raised by Traxcell with Dr. Shoemake's apportionment analysis are sufficient to justify exclusion.

Traxcell argues that Dr. Shoemake could not identify any other publication using his approach. (*Id*. at 13.) While Dr. Shoemake apparently could not cite to another publication that used his approach during depositions, Verizon provided other publications in its response to support Dr. Shoemake's analysis. (Dkt. No. 322 at 9–10.) Because of this and because Verizon has shown that Dr. Shoemake's testimony is otherwise reliable, the Court gives little weight to this argument by Traxcell.

Traxcell argued that Dr. Ugone, Verizon's economic expert, testified that he would not use the apportionment analysis, and Traxcell seems to argue that this suggests that Dr. Shoemake's analysis is unreliable. (*Id*. at 10, 13–14.) However, Ugone's decision not to utilize Dr. Shoemake's apportionment analysis does not show it is unreliable. Dr. Ugone merely stated that he likely would not use Dr. Shoemake's apportionment opinions because Dr. Ugone did not remember including Dr. Shoemake's opinions in Dr. Ugone's report. (Dkt. No. 309-10 at 73:22–74:12.) Further, Defendants represent that Shoemake's apportionment opinions are used to rebut Dr. Helgert's apportionment analysis. (Dkt. No. 322 at 6–7.)

Dr. Shoemake relied on certain documents, and Traxcell argues that the documents are hearsay documents and that "[t]he documents do not have any support as business records, and no custodian vouches for them or explains them." (*Id*.) Even if documents relied on by Dr. Shoemake are hearsay, Dr. Shoemake is permitted to rely on such documents "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject. . . ." Fed. R. Evid. 703. Traxcell has not argued that another expert would not reasonably rely on the facts or data utilized by Dr. Shoemake, and the Court has not seen any evidence to suggest that an expert would not reasonably rely on the facts or data utilized by Dr. Shoemake. While Ugone decided not to utilize Dr. Shoemake's apportionment analysis, this fact does not

suggest that Ugone or any other expert would not have utilized the facts or data used by Dr. Shoemake in his apportionment analysis.

For these reasons, the Court **DENIES** Traxcell's Motion on this ground.

### IV. Rysavy's opinions regarding the "location" term will not be excluded.

The term "location" within the claims of the '024 Patent was construed by the Court, and Traxcell argues that Mr. Rysavy improperly provides opinions construing "location" in a manner that conflicts with the Markman Order. (Dkt. No. 309 at 12–13.) Traxcell points to where Rysavy discusses the difference between distances and location. (Dkt. No. 322-7 at ¶ 80.) There, Rysavy states that

> A person of ordinary skill in the art would not consider distance of the wireless device from the cell site to be the same as the location of the wireless device. A location is a specific point in space and in two-dimensional space is characterized by values of latitude and longitude. The term location is common in the cellular industry. The term is never used synonymously with distance.

(*Id.*) This discussion was made in response to the contention by Traxcell's expert that a distance from a cell tower could constitute location under the Court's construction. (*See* Dkt. No. 322 at 13.) Traxcell asserts that "[t]here is simply no way to square the Court's construction of 'location' — 'location that is not merely a position in a grid pattern' — with that of Mr. Rysavy — 'a specific point in space . . . characterized by values of latitude and longitude.'" (Dkt. No. 309 at 12–13.)

The parties in this case agreed to construe "location" and "indication of [a] location" within claims of the '284 Patent, '320 Patent, and '024 Patent as a "location that is not merely a position in a grid pattern." (Dkt. No. 171 at 12–13.) This was the same construction reached in the previous -00042 case between Traxcell and Nokia. (Dkt. No. 261 at 21–23 in *Traxcell Technologies, LLC v. Huawei Technologies USA Inc.*, Case No. 2:17-cv-00042.) In the Claim Construction Order

entered in that case, the Court stated that "[t]he parties, and the Court, agree that [the construction for location] does not exclude location as a point comprising a latitude and longitude." (*Id*. at 22.)

After consideration, the Court will not exclude any of Rysavy's opinions on this matter. The parties here agreed to the Court's construction from the -00042 case, where the Court construed "location" to mean "location that is not merely a position in a grid pattern." The Court's construction for location limits location not by what it is, but instead by what it is not. The construction possesses a carve-out for "a position in a grid pattern," but the construction otherwise leaves "location" undefined.[1] Thus, Rysavy's opinions about how a person of ordinary skill in the art would interpret location does not conflict with the Court's construction.

Furthermore, the Court previously stated that "location as a point comprising a latitude and longitude" fell within the scope of location and has even used that as an example. (Dkt. No. 261 at 21–23 in *Traxcell Technologies, LLC v. Huawei Technologies USA Inc*., Case No. 2:17-cv-00042; Dkt. No. 386 at 9 in *Traxcell Technologies, LLC v. Huawei Technologies USA Inc*., Case No. 2:17-cv-00042 (recommending that summary judgment be granted due to a lack of evidence where Traxcell had not provided evidence that the accused products used a specific location of a phone such as by longitude and latitude and instead only asserted that the accused products use 50-meter-by-50-meter bins or cells). Traxcell's expert appears to have opined that the distance of a wireless device from the cell tower may constitute a location under the Court's construction, and Rysavy merely contrasts distance from location using the example provided by the Court. (*See* Dkt. No. 322-7 at ¶ 80.)

For these reasons, the Court **DENIES** Traxcell's Motion on this ground.

---

[1] This construction was reached due to statements within the prosecution history. (Dkt. No. 261 at 22 in *Traxcell Technologies, LLC v. Huawei Technologies USA Inc*., Case No. 2:17-cv-00042.)

## V. Conclusion

Accordingly, the Court **DENIES** Traxcell's Motion.

**SIGNED this 18th day of September, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE