IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TRAXCELL TECHNOLOGIES, LLC., § § § *Plaintiff*, § v. § § AT&T CORP. and AT&T MOBILITY LLC, § § | | Case No. 2:17-cv-00718-RWS-RSP (LEAD CASE) |
| SPRINT COMMUNICATIONS COMPANY, LP, SPRINT SPECTRUM, LP, and SPRINT SOLUTIONS, INC., § § § § § | | Case No. 2:17-cv-00719-RWS-RSP (MEMBER CASE) |
| VERIZON WIRELESS PERSONAL COMMUNICATIONS, LP, § § § *Defendants*. § | | Case No. 2:17-cv-00721-RWS-RSP (MEMBER CASE) |

## MEMORANDUM ORDER

Before the Court is the Motion for Attorneys' Fees filed by Verizon Wireless Personal Communications LP. Dkt. No. 476. Having considered the briefing, Verizon's motion is GRANTED IN PART.

### I.     Background

On October 31, 2017, Plaintiff Traxcell Technologies, LLC filed its complaint, which alleged infringement of U.S. Patent Nos. 8,977,284 (the "'284 Patent"), 9,510,320 (the "'320 Patent), 9,642,024 (the "'024 Patent) (the "Network Tuning Patents"), and U.S. Pat. No. 9,549,388 (the "'388 Patent") (collectively, the "Asserted Patents"). Dkt. No. 1. The present case—which was consolidated with lead case *Traxcell v. AT&T Corp. et al.*, Case No. 2:17-cv-00718-RWS-RSP (hereinafter the "*AT&T* Case")—is the second in a series of cases involving the Network Tuning Patents; therefore, the Court will review the facts from the first case because they relate to issues raised by the parties.

1

### a. *Huawei* Case

Prior to the filing of this suit, Traxcell previously brought claims of infringement of the Network Tuning Patents against two parties in this Court: Nokia Solution and Networks US LLC and Nokia Solutions and Networks Oy (collectively, "Nokia") in *Traxcell v. Nokia*, Case No. 2:17-cv-00044-RWS-RSP (hereinafter the "*Nokia* Case"), Dkt. Nos. 1, 10, and against Huawei Technologies USA Inc. in *Traxcell v. Huawei et al.*, Case No. 2:17-cv-00042-RWS-RSP (hereinafter "*Huawei* Case"). *Huawei*, Dkt. No. 1. The *Huawei* Case and *Nokia* Case were consolidated for pre-trial matters and the *Huawei* Case was designated the lead case.

On January 7, 2019, the Court issued a claim construction order in the *Huawei* case. *Huawei*, Dkt. No. 261. Relevant to this motion, the Court construed the terms "computer" and "location" and also determined that Claim 1 of the '284 Patent was indefinite. *Id*. The Court construed "computer" to mean "single computer" and "first computer" to mean "first single computer." Dkt. No. 261 at 18. These constructions were based on the patentee's statements in the prosecution history of the '284 Patent. *Id*. at 15, 17.

For the term "location," the Court construed the term to mean "location that is not merely a position in a grid pattern." Dkt. No. 261 at 23. The Court reached this construction also based on statements made by the patentee in the prosecution history of the asserted patent. *Id*. at 22. Based on those statements, the Court concluded that the patent applicant distinguished the claimed invention from the prior art references and represented that the "location" of the claimed invention is therefore not merely a position in a grid pattern. *Id*.

Traxcell failed to timely object to the Court's claim construction order, and the Court later denied Traxcell's motion for leave to file objections because Traxcell provided no reason for its 6 month delay. *Huawei*, Dkt. No. 405.

On May 15, 2019, the Court issued a Report and Recommendation (the "*Huawei* R&R") that recommended granting summary judgment of non-infringement to Nokia because the Court found that there was no genuine dispute of material facts that Nokia's products did not infringe the location and computer limitations. *Huawei*, Dkt. No. 386. As to the location limitation, the Court found that Traxcell's infringement theory was based on 50-meter-by-50-meter bins and geographic cells. *Id.* at 9. The Court found that bins and cells amounted to merely a position in a grid pattern, which is contrary to the Court's construction. *Id.* As to the computer limitation, the Court found that Traxcell's evidence showed that multiple computers were needed to meet the claim limitations. *Id.* at 12. Additionally, the Court found that "prosecution history estoppel bars the application of the Doctrine of Equivalents here, and [Traxcell] is precluded from asserting that the 'first computer' and 'computer' limitations may be satisfied by multiple computers." *Id.* at 14.

On May 29, 2019, Traxcell timely filed objections to the Court's recommendation of summary judgment of non-infringement. *Huawei*, Dkt. No. 389. Although Traxcell did file objections to the Court's application of prosecution history estoppel, the objections were directed towards the Court's construction of computer, not the Court's grant of summary judgment itself. *Id.* at 5-8. When the District Judge adopted the recommendation of summary judgment on December 11, 2019, he specifically found that Traxcell's objections to the Claim Construction Order were untimely and therefore waived. *Huawei*, Dkt. No. 411 at 3.

### b. *AT&T* Case

Turning to this case, the Court issued a claim construction order on April 15, 2019. Dkt. No. 171. Traxcell agreed in this case to the same construction of "location" that was issued in the *Huawei* Case, which was "a location that is not merely a position in a grid pattern" *Id.* at 12-13. Although Traxcell offered new arguments as to the computer limitation, the Court ultimately

provided the same construction for computer as it did in the *Huawei* Case. *Id.* at 16-18. Finally, the Court again found Claim 1 of the '284 Patent was indefinite. *Id.* at 27. As in the *Huawei* Case, Traxcell failed to timely object to the Claim Construction Order. Dkt. No. 451 at 3.

On May 7, 2019, Traxcell received a Certificate of Correction for the '284 Patent. Dkt. No. 182. After receiving the Certificate of Correction, Traxcell moved to assert the corrected Claim 1 of the '284 Patent by filing a motion for leave to file an amended complaint. Dkt. No. 188. The Court denied the motion because the Court determined during claim construction that Claim 1 contained "a means-plus-function term and that the specification did not adequately disclose sufficient structure to perform the recited function, making Claim 1 indefinite . . . and [that] the proposed amendments to the complaint do not cure the indefiniteness issues regarding the means-plus-function term." Dkt. No. 209 at 2.

On June 19, 2019, Traxcell filed a motion for leave to supplement its infringement contentions with a Doctrine of Equivalents theory although the Court made it clear in the *Huawei* R&R that prosecution history estoppel barred the Doctrine of Equivalents. Dkt. No. 210. On July 22, 2019, the Court denied Traxcell's motion for leave to supplement its infringement contentions for two reasons: (1) Traxcell did not show good cause for filing the supplemental infringement contentions and (2) the Court concluded that "the proposed supplemental infringement contentions would be futile" in light of the Court's claim construction order in the *Huawei* Case. Dkt. No. 254 at 3. Furthermore, the Court stated in its Order denying leave that "Traxcell has not identified any persuasive reason why the Court would reach a different conclusion within this case. As such, the Court concludes that prosecution history estoppel similarly applies in this case and precludes the application of the Doctrine of Equivalents, making the proposed supplemental infringement contentions futile." *Id.* at 4.

On September 18, 2019, the Court issued a Report and Recommendation that recommended granting summary judgment of non-infringement of the '024 Patent because Traxcell failed to create a genuine dispute as to whether Verizon's products infringed the computer and location limitations in the asserted claims of the '024 Patent. Dkt. No. 399. On October 7, 2019, the Court issued a Report and Recommendation that recommended granting summary judgment of non-infringement of the '388 Patent. Dkt. No. 444. On April 15, 2020, the District Judge overruled Traxcell's objections and adopted both Report and Recommendations. Dkt. No. 471.

## II.     Legal Standard

Pursuant to the Patent Act, in "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S. 545, 134 S. Ct. 1749, 1756, 188 L. Ed. 2d 816 (2014); *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 134 S. Ct. 1744, 1748, 188 L. Ed. 2d 829 (2014) (noting that "the word 'exceptional' in § 285 should be interpreted in accordance with its ordinary meaning" (citing *Octane Fitness*, 134 S. Ct. at 1755)).

District courts must determine whether any particular case is "exceptional" in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. Whether a case is "exceptional" or not "is a factual determination," *Forcillo v. Lemond Fitness, Inc.*, 168 F. App'x 429, 430 (Fed. Cir. 2006), and the court must make its determination by a "preponderance of the evidence," *Octane Fitness*, 134 S. Ct. at 1758 (rejecting

5

the prior requirement that a patent litigant establish its entitlement to fees under § 285 by "clear and convincing" evidence).

In assessing the "totality of the circumstances," courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.9, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994) (addressing a similar fee-shifting provision in the Copyright Act). A party's conduct need not be independently sanctionable to warrant an award of fees under § 285; however, fee awards should not be used "as a penalty for failure to win a patent infringement suit." *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1753, 1756-57 (Fed. Cir. 2017); *see also Checkpoint Sys.*, 858 F.3d at 1376.

### III.   Analysis

Verizon asks the Court to award its attorneys' fees from the issuance of the claim construction order on April 15, 2019 through October 2019. Dkt. No. 476 at 1. Verizon chose the issuance of the claim construction order as the point this case became exceptional because Verizon argues that Traxcell's infringement theories became objectively baseless in light of the claim construction order. *Id.* at 3. Furthermore, Verizon argues that it made clear to Traxcell that its theories were baseless in its May 23, 2019 Rule 11 letter to Traxcell, which specifically explained how Verizon's products did not infringe the Asserted Patents. *Id.* (citing Dkt. No. 476-25). Thus, Verizon's argument is that this case became exceptional under § 285 when Traxcell continued to maintain its infringement theories after claim construction.

In addition to the baseless infringement theories, Verizon argues that this case is exceptional because of Traxcell's litigation misconduct that improperly prolonged the suit.

Specifically, Verizon points to Traxcell asserting both the invalid and "corrected" Claim 1 of the '284 Patent, *id.* at 4-5; attempting to amend its complaint to assert the corrected Claim 1, *id.* at 5; filing untimely and meritless claim construction objections, *id.*; and finally asserting a baseless Doctrine of Equivalents argument. *Id.* at 5-6.

In response, Traxcell argues that the claim construction order was not final when it made its objections and that it "reassessed" its infringement theories. For the first argument, Traxcell argues that, "until a district court overrules objections, a magistrate's ruling is not final when there is no *Nettles* Notice and objections are made that are not egregiously late or prejudice the other party." Dkt. No. 496 at 3-4. Thus, Traxcell's first argument is that it was not unreasonable for it to maintain its infringement theories because there was no final claim construction order until the District Judge overruled Traxcell's objections to the claim construction order on October 9, 2019 (Dkt. No. 451). For the second argument, Traxcell contends that it withdrew an entire patent and several claims during the course of the litigation, and furthermore, it reassessed its infringement positions in light of the Court's claim construction order in this case and in the *Huawei* Case. *Id.* at 4-5.

The Court finds this case "exceptional" under § 285 based on Traxcell's pursuit of objectively baseless infringement theories and filing of meritless motions that disregarded the earlier rulings. Traxcell's first argument was addressed when the Court overruled Traxcell's previous untimely claim construction objections: the Court overruled Traxcell's objections and specifically cited Fed. R. Civ. P. 72(a) as the basis for finding Traxcell's arguments untimely. Dkt. No. 451 at 2. Traxcell's failure to address Fed. R. Civ. P. 72(a) and its continual repetition of arguments that the Court has already rejected are among many examples of Traxcell's disregard

7

of the Court's prior reasoning and orders. The fact that further appeals are always available does not rescue objectively baseless positions.

Turning to Traxcell's second argument, Traxcell should have known its infringement theories, including its changed theories, in this case were unsupported when the Court issued the *Huawei* R&R. The Court's recommendation of granting summary judgment to Nokia was based on Traxcell's failure to create a genuine dispute as to whether Nokia's products infringed the Court's construction of the computer and location limitations. Because the Court in this case issued the same constructions for location and computer as it did in the *Huawei* Case, Traxcell should have known its infringement theories in this case, which were materially equivalent to its theories in *Huawei*, were unsupported.

The similarities in Traxcell's infringement theories in the *Huawei* Case and this case are borne out by comparing the reasoning in the respective report and recommendations granting summary judgment. *Cf. Huawei*, Dkt. No. 386 *with* Dkt. No. 399. As to the computer limitation, the Court found in *Huawei* that Traxcell's identification of a Graphical User Interface ("GUI") server as the single computer did not satisfy the claims because "the GUI server is simply the interface that a user interacts with to display data without even storing it." *Huawei*, Dkt. No. 386 at 12. Similarly, the Court found in this case that Traxcell's identification of the SON ("Self-Organizing Network") Portal did not meet the computer limitation because the "SON Portal server merely acts as an interface that users may use to access the individual services of other SON servers." Dkt. No. 399 at 7.

As to the location limitation, the Court in *Huawei* stated, "the use of 50-meter-by-50-meter bins and geographic cells does not amount to a location under the Court's construction." *Huawei*, Dkt. No. 386 at 9. Similarly, the Court in this case concluded that "a bin or a sector within that bin

8

both amount to position within a grid pattern. Therefore, the use of these bins does not satisfy the 'location' limitation as construed by the Court." Dkt. No. 399 at 10.

Although Traxcell argues that it reassessed its infringement theories, the Court finds that Traxcell only provided a different infringement theory of the location limitation in this case. However, the Court further finds that Traxcell's reassessed theory is just as unsupported as its original theory. Traxcell's reassessed theory was that Verizon's products infringed the location term because the products used the distance from a known point to determine a location for each device. Dkt. No. 496 at 5-6. However, the Court rejected this theory at summary judgment because Traxcell improperly conflated distance from a known point with location, even though the Network Tuning Patents clearly treat distance and location as two distinct concepts. Dkt. No. 399 at 8. Thus, Traxcell simply went from one unsupported infringement theory to another.

However, the Court does not find the case exceptional solely for Traxcell's continued reliance on unsupported infringement theories: it is Traxcell's filing of meritless motions and continual disregard of the Court's reasoning that tips the scales towards finding this case exceptional. Traxcell's attempts (1) to file untimely objections to the claim construction order; (2) to seek leave to amend its complaint to assert the corrected Claim 1 of the '284 Patent; and (3) to amend its infringement contentions to include a Doctrine of Equivalents theory were all meritless.

First, Traxcell attempted to object to the Court's claim construction order by moving for leave to file objections. The Court denied the motion for two reasons: Traxcell waived its objections under Fed. R. Civ. P. 72(a) based on its failure to timely file its objections and (2) the objections were meritless. Dkt. No. 451 at 3. Thus, the Court found Traxcell's motion meritless.

Second, the Certificate of Correction only addressed one of the two indefiniteness issues the Court found during claim construction. The Certificate of Correction failed to address the lack

9

of structure corresponding to the mean-plus-function language in the claim. Because the Certificate of Correction did not correct the mean-plus-function issue, the Court in this case, and the Federal Circuit on appeal, found that it would be "futile" to allow Traxcell to assert the corrected claim. Dkt. Nos. 209, 219; *Traxcell Technologies, LLC v. Sprint Comm.'s Co. LP*, 15 F.4th 1121, 1134 (Fed. Cir. 2021). Thus, the Court denied Traxcell's motion to amend its complaint as meritless.

Relatedly, Traxcell decided to ignore the Court's order denying this relief when it continued to assert both the invalid and corrected claim during fact discovery, expert discovery, and even planned on asserting it at trial, as shown in the Joint Pretrial Order. Dkt. No. 392 at 5. Although Traxcell argues that it could continue to assert the invalid claim because the Court's claim construction order was subject to objections, as explained above, the Court found those objections meritless and therefore they cannot serve as an objectively reasonable basis to assert the invalidated claim. Traxcell also had no reasonable basis to assert the corrected claim because it only addressed one of the two issues the Court found during claim construction.

Third, Traxcell moved for leave to include a Doctrine of Equivalents theory of infringement of the computer limitation. Dkt. No. 210. This is particularly egregious because the motion ignored the Court's reasoning in the *Huawei* R&R, which clearly stated that prosecution history estoppel barred application of the Doctrine of Equivalents to the computer limitation. Thus, Traxcell should have known that its motion was meritless before it was filed.

Traxcell argues that it believed that "there was a viable argument under the Doctrine of Equivalents" because the Court's claim construction order in this case did not explicitly find disclaimer. Dkt. No. 496 at 7 (citing Dkt. No. 171 at 18). Again, the Court made it clear in *Huawei* that statements in the prosecution history limited the term computer to a single computer; therefore, Traxcell ignored the Court's reasoning when seeking leave to amend.

Furthermore, Traxcell's frivolous Doctrine of Equivalents argument prejudiced Verizon when Traxcell served an expert report opining on the Doctrine of Equivalents on June 17, two days before it sought leave to amend its contentions. Dkt. No. 476 at 6. This act not only ignores the Court's reasoning, it created prejudice to Verizon by forcing it to provide expert testimony to respond to an objectively unsupported infringement theory.

Traxcell's remaining arguments do not weigh against finding this case exceptional. Traxcell argues that it never accepted or sought "nuisance value settlements," Dkt. No. 496 at 14, and that Verizon should be precluded from being awarded its fees because "the true purpose of Verizon's motion is to limit Traxcell's access to the courthouse." *Id.* at 15. Although the Federal Circuit has found seeking nuisance value settlements can weigh in favor of finding a case exceptional, *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1362 (Fed. Cir. 2017), the Court does need to find that Traxcell sought nuisance value settlements in order to find the case exceptional.

For the latter argument, the Supreme Court was clear in *Octane Fitness* that the Court can award fees based on "the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 134 S. Ct. at 1756 n.6. Furthermore, Verizon argues that the Court should award its fees "to deter future frivolous lawsuits and improper conduct by Traxcell," not bar Traxcell's access to the courthouse. Dkt. No. 476 at 15. The Court agrees with Verizon and finds that deterring Traxcell from disregarding the Court's reasoning in future cases before this Court is another factor that weighs in favor of awarding fees.

Because the Court has found the case exceptional, the only remaining issue is the amount to be awarded. At no point does Traxcell argue that the specific hourly rates or times billed by Verizon's counsel were unreasonable. Because Traxcell does not question the reasonableness of

the hourly rates or times billed by Verizon's counsel, the Court also does not question the reasonableness of the rates or times.

Although Verizon seeks its fees from April 15, 2019 to the end of October 2019, the Court finds the case became exceptional around July 22, 2019, when the Court denied Traxcell's motion to amend its infringement contentions. It was at this point that Traxcell should have objectively known its infringement theories could not succeed. Therefore, the Court awards Verizon its fees from August 1 to October 31, 2019, which totals $132,046.50 based on the amounts listed in Dkt. Nos. 476-2; 476-6; and 476-22.

### IV.    Conclusion

It is **ORDERED** that Traxcell pay to Verizon its fees from August 1 to October 31, 2019, which amount to a total of $132,046.50, within 30 days of this Order.

**SIGNED this 29th day of March, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE